ACCEPTED
14-15-00138-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
3/26/2015 7:51:08 PM
CHRISTOPHER PRINE
CLERK

# No. 14-15-00138-CV

In the Court of Appeals for the
Fourteenth District of Texas at Houston

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
3/26/2015 7:51:08 PM
CHRISTOPHER A. PRINE
Clerk

CITY OF HOUSTON,

*Appellant*

v.

FREEDMEN'S TOWN PRESERVATION COALITION,

*Appellee*

On Appeal from the 80th Judicial District Court
Harris County, Texas
Trial Court Case No. 2015-02771

## MOTION FOR REHEARING AND TO RECONSIDER DISMISSAL OF APPEAL FOR MOOTNESS

Donna L. Edmundson
City Attorney

Judith L. Ramsey
Chief, General Litigation Section

Kathleen Hopkins Alsina
Senior Assistant City Attorney
State Bar No. 09977050
Mary E. (Mary Beth) Stevenson
Assistant City Attorney
State Bar No. 24072366
CITY OF HOUSTON LEGAL
DEPARTMENT
900 Bagby, Fourth Floor
Houston, Texas 77002
832.393.6491 (Telephone)
832.393.6259 (Facsimile)
kate.alsina@houstontx.gov
marybeth.stevenson@houstontx.gov

*Attorneys for Appellant*

# Table of Contents

**Page**

Table of Contents.................................................................................................ii

Index of Authorities ............................................................................................iv

Statement Regarding Record ............................................................................. vi

Issue on Rehearing............................................................................................. vii

I.     Introduction ............................................................................................... 1

II.    Background Facts ...................................................................................... 3

III.   Procedural History – Trial Court ............................................................. 5

IV.   Procedural History – Court of Appeals.................................................... 8

V.    Argument and Authorities........................................................................ 8

    A.     The Court ruled on the motion to dismiss prematurely. ............... 8

    B.     The Coalition's primary authority, *Blackmon*, is not controlling because it does not involve the effect of a stay on a nonsuit and it was not decided under current law. .................... 9

    C.     *Klein v. Hernandez* is also irrelevant because the nonsuit there was filed *before* the appeal of the plea to the jurisdiction. ........... 11

    D.     The Coalition should not be allowed to circumvent the automatic stay. ................................................................................ 12

    E.     The failure to enforce the Section 51.014(b) stay has resulted in a miscarriage of justice and prejudice to the City and the property owners in Freedmen's Town...................................... 14

         1.    The trial court acted outside its jurisdiction—and admitted it....................................................................... 14

2. The trial court declared the entirety of Freedmen's Town, and specifically the streets, a landmark without pleading or proof of ownership of the land. ....................... 16

3. The trial court should not have proceeded in the absence of the City and the adjacent landowners. ............. 17

F. The trial court allowed the Coalition to make an end run around governmental immunity. .............................................. 18

G. A party's right to file a nonsuit has exceptions. .......................... 19

Conclusion and Prayer ............................................................................. 26

Certificate of Compliance ....................................................................... 22

Certificate of Service ............................................................................... 28

Exhibits

Appendix

# Index of Authorities

**Page(s)**

**Cases**

*Bd. of Regents v. Walker Cnty. Historical Comm'n*,
608 S.W.2d 252 (Tex. Civ. App.—Houston [14th Dist.] 1980, no
writ)..................................................................................................4, 15

*City of Houston v. Swinerton*,
233 S.W.3d 4 (Tex. App.—Houston [1st Dist.] 2007, no pet.)....... 13, 14, 20

*Dykes v. City of Houston*,
406 S.W.2d 176 (Tex. 1966)..................................................... 4

*Harris Cnty. v. Sykes*,
136 S.W.3d 635 (Tex. 2004)..................................................... 13

*Hendrick Med. Ctr. v. Howell*,
690 S.W.2d 42 (Tex. App.—Dallas 1985) (orig. proceeding).................... 20

*In re Team Rocket, L.P.*,
256 S.W.3d 257 (Tex. 2008) (orig. proceeding) ....................................... 20

*Klein v. Hernandez*,
315 S.W.3d 1 (Tex. 2010) ..................................................... 11

*Oryx Capital Int'l v. Sage Apartments, LLC*,
167 S.W.3d 432 (Tex. App.—San Antonio 2005, no pet.)............. 13, 19, 20

*Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*,
333 S.W.3d 736 (Tex. App.—Houston [1st Dist.] 2010, no pet.) .............. 18

*Univ. of Tex. Med. Branch v. Blackmon*,
195 S.W.3d 98 (Tex. 2006)..................................................... 9

**Statutes**

Tex. Civ. Prac. & Rem. Code § 37.006...................................................... 17

Tex. Civ. Prac. & Rem. Code § 51.014...................................................... 14

Tex. Nat. Res. Code § 191.051.................................................................. 4

Tex. Nat. Res. Code § 191.052................................................................ 15

Tex. Nat. Res. Code § 191.092.................................................................. 4

Tex. Nat. Res. Code § 191.093.................................................................. 6

Tex. Nat. Res. Code § 191.094.................................................. 2, 4, 5, 16

Tex. Nat. Res. Code § 191.095.................................................................. 6

Tex. Nat. Res. Code § 191.173................................................................15, 19

**Other Authorities**

Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 103, sec. 51.014, 2003
Tex. Gen. Laws 847 ........................................................................10, 11

Tex. R. App. P. 10.3 .........................................................................1, 8, 9

Tex. R. App. P. 49.1 ............................................................................. 1, 9

Tex. R. Civ. Evid. 201 ........................................................................ 10

## Statement Regarding Record

The clerk's record has not been filed as of the date of this motion. In addition, the City has requested a supplemental clerk's record and reporter's record. The City will file an amended motion with full record cites as soon as they are available. In the meantime, a certified copy of each page referenced is included in the appendix.

## Issue on Rehearing

Whether this Court erred in dismissing this appeal on the basis of mootness when 1) the primary case relied on by the Appellees and cited by the Court does not involve the effect of a stay on a later nonsuit and was not decided under current law; 2) the nonsuit was strategic, for the purpose of circumventing the automatic stay under Section 51.014(b) of the Civil Practice and Remedies Code; 3) the nonsuit resulted in a miscarriage of justice and prejudice to the City and to the property owners in Freedman's Town; and 4) the nonsuit was used to deprive the City of its interlocutory appeal on governmental immunity while at the same time effectively enjoining the City's work through a temporary injunction against its contractor.

TO THE HONORABLE COURT OF APPEALS:

Appellant, the City of Houston, respectfully asks this Court for a rehearing and to reconsider its order granting Appellee Freedmen's Town Preservation Coalition's Amended Motion to Dismiss Appeal for Mootness. Tex. R. App. P. 49.1; Tex. R. App. P. 10.3(b).

## I.     Introduction

Section 51.014(b) of the Texas Civil Practice and Remedies Code was amended in 2003 to add the provision that for four types of orders subject to interlocutory appeal, "all other proceedings" are stayed pending resolution of the appeal. The stay applies to an appeal of an order granting or denying a governmental entity's plea to the jurisdiction.

The stay specifically applies to "all other proceedings"—and this case is a perfect example of why "all other proceedings" must include an attempted nonsuit. In a case like this one, where a party seeks to enjoin a governmental function, the City is a necessary party. The City's rights and the rights of its citizens—particularly of the private property owners involved—is at issue. The trial court entered an order purporting to designate all streets in Freedmen's Town as "state archeological landmarks," subject to protection by state law,

but without the presence of either the City or the affected landowners to defend their rights.[1]

The City is entitled to pursue its immunity defenses before the trial court reaches the merits. The automatic stay under Section 51.014(b) requires that the trial court allow the issues raised by the plea to be finally decided before litigation affecting a governmental entity proceeds. A situation like this one—where the City's rights are effectively litigated without its presence—should never occur.

The nonsuit was intended to evade the stay of proceedings in the trial court pending this Court's review of the trial court's jurisdiction and to obtain broad relief beyond that necessary to Plaintiff's claims against Conrad Construction Co., Ltd. The ploy has been successful. The trial court has allowed the Coalition to proceed against the City's contractor, without the City, and has now entered a temporary injunction declaring that all of

---

[1] It is of particular significance that the court declared the entirety of Freedmen's Town to be a State Archeological Landmark, as well as the brick streets, without regard to the landowners. The Coalition failed to prove public ownership of the land (which is required under Texas Natural Resources Code section 191.092(a), the section they—and the trial court—cited in support of the temporary injunction). Freedmen's Town is not public land. Written consent of the landowners is required for a landmark to be designated on private land. Tex. Nat. Res. Code § 191.094. The trial court entered its March 2, 2015 temporary injunction without evidence of or a finding concerning ownership or consent. (Supp._CR___ (App. 1)).

Freedmen's Town, including the streets, are landmarks. (*See* Supp._CR____).[2] The trial court has halted a governmental function by allowing an end run around the statute intended to guarantee that the trial court's jurisdiction be determined before a lawsuit involving a governmental entity proceeds.

## II.  Background Facts

This is an appeal from an interlocutory order entered February 12, 2015, denying the City of Houston's plea to the jurisdiction. On February 25, 2015, this Court granted the Coalition's motion to dismiss the appeal for mootness. The City asks the Court to reconsider the dismissal and reinstate the appeal.

The underlying lawsuit sought to enjoin the City and its contractor, Conrad, from renovating water and sewer lines, drainage, and certain street surfaces in an area of Houston known as "Freedmen's Town." (CR____).[3] The Coalition sued to prevent the City and Conrad from "removing, altering, damaging, destroying, covering, salvaging, rearranging, disturbing or excavating any bricks" from the streets where the infrastructure work is to be performed. (*Id.*).

---

[2] App. 1.

[3] App. 2.

The legislature established the Texas Historical Commission (THC) as the state agency with exclusive jurisdiction to designate state archeological landmarks under procedures set out in the "Antiquities Code." Tex. Nat. Res. Code § 191.051(b)(2) (Antiquities Code); *Bd. of Regents v. Walker Cnty. Historical Comm'n*, 608 S.W.2d 252, 253 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ). Citizens may request the THC to make such a designation. Tex. Nat. Res. Code § 191.092(c). Structures on both public and private land may be nominated, but designation of a landmark on private land[4] requires the written consent of the landowner. Tex. Nat. Res. Code § 191.094(b).

Although the Coalition alleges that Freedmen's Town has been recognized in the National Register of Historic Places since 1984, it is undisputed the THC has never designated the bricks and streets or any land in Freedmen's Town as a state archeological landmark.

The Coalition also alleges that since 2007 there have been discussions with the City about how to perform the street, water, and sewer repairs without disturbing the bricks. (CR___).[5] However, the Coalition did not seek a designation of the streets and bricks as state archeological landmarks from the

---

[4] The presumption is that land under streets is owned to the centerline of the street by the adjoining lot owners. The City has an easement only. *See Dykes v. City of Houston*, 406 S.W.2d 176, 182 (Tex. 1966).

[5] App. 2.

THC until after filing this lawsuit. (Supp. RR 42-43 (March 2, 2015 hearing))[6].

No such designation has been made by the THC, nor is there evidence that the Coalition sought a designation of all of Freedmen's Town as a landmark.

More importantly, the Coalition neither alleged nor proved that the land was public land or that the private landowners consented to designate any structure on their land as a landmark, as required under the statute. Tex. Nat. Res. Code § 191.094. The landowners were not parties to this suit. Although several attempted to intervene, the Coalition opposed their intervention and the trial court denied their attempt. (1_RR_12). The trial court then entered an order finding all of Freedmen's Town, as well as the streets, to be a state archeological landmark without any evidence establishing who owned the land or whether the landowners consented. (CR_____.)[7]

## III. Procedural History – Trial Court

On January 20, 2015, the Coalition applied for and received an ex parte temporary restraining order against the City, alleging that Freedmen's Town has been designated as a "historical site" and that the Texas Antiquities Code prohibits "any alteration, removal or destruction of such structures without

---

[6] App. 10.

[7] App. 1.

either (1) an approved contract by the THC or (2) an express permit granted by the THC." (CR____).[8] *See* Tex. Nat. Res. Code §§ 191.093 and 191.095 ("Antiquities Code")). A hearing on the temporary injunction was initiated on February 12, 2015 and continued on March 2, 2015.

The City moved to deny the injunction and also filed a plea to the jurisdiction arguing that its immunity was not waived under Section 191.173(a) of the Antiquities Code. (CR____).[9]

On February 12, 2015, the trial court denied the City's plea to the jurisdiction. (CR____[10]; 1_RR_30-31). The City filed a notice of interlocutory appeal pursuant to Texas Civil Practice and Remedies Code § 51.014(a)(8) and specifically invoked the automatic stay provisions of section 51.014(b) requiring a stay of all proceedings in the trial court. (CR____[11]; 1_RR_124, 128, 132). Rather than enforcing the mandatory stay, the trial court allowed the proceeding to continue. (1_RR_133).

After the City invoked the stay, the Coalition announced it would nonsuit the City. (1_RR_131). The City reasserted its right to the 51.014(b)

---

[8] App. 3.

[9] App. 5.

[10] App. 6.

[11] App. 7.

automatic stay of all proceedings. (1_RR_132). The Court denied the stay, finding that it applied only to the City. (1_RR_132). The trial court proceeded with the injunction hearing and set it to resume at a later date against Conrad only. (1_RR_134).

On March 2, 2015, the trial court conducted a hearing on the temporary injunction, with Conrad as the only defendant. The trial court signed an order stating that Freedmen's Town in its entirety, as well as the "brick paved streets," constitute "state antiquities landmarks" under the Antiquities Code. (Supp._CR____).[12] The court ordered that Conrad "and all those acting in concert with them, be and hereby are prohibited from in any manner, directly or indirectly, removing, altering, damaging, destroying, covering, salvaging, rearranging, disturbing or excavating any bricks from any of the streets, alleys and avenues located within the geographical boundaries of Freedmen's Town Historic District." (Supp._CR____).[13]

Conrad has filed its notice of interlocutory appeal in this court. (Supp._CR___).[14]

---

[12] App. 1.

[13] App. 1.

[14] App. 8.

7

## IV. Procedural History – Court of Appeals

On February 17, 2015, the Coalition filed an Amended Motion to Dismiss Appeal for Mootness, arguing that the City's interlocutory appeal of its plea to the jurisdiction was moot because the City had been nonsuited at trial. The City's response was due within ten days, by February 27, 2015. Tex. R. App. P. 10.3(a).

The City responded to the amended motion to dismiss at approximately **4:45 p.m. on February 24, 2015**. *See* Ex. A. The email notice from the electronic service provider shows that the Court "received" the response at approximately **8:00 a.m. on February 25, 2015**. *See* Ex. B. However, the City received by email notice, with a time notation of **3:00 a.m**., **February 25, 2015,** an order granting the motion to dismiss. *See* Ex. C. Therefore it appears that the Court ruled on the motion to dismiss without having received the City's response.

## V. Argument and Authorities

### A. The Court ruled on the motion to dismiss prematurely.

Under Texas Rule of Appellate Procedure 10.3(a), an appellate court should not hear or determine a motion until 10 days after the motion was filed. The Coalition's amended motion to dismiss, filed February 17, 2015, should

not have been heard or determined before **Friday, February 27, 2015**.

Therefore the City's February 25, 2015 response was timely.[15]

Because the motion to dismiss the appeal was ruled on without consideration of the City's response on the mootness issue, the City respectfully asks for rehearing. Tex. R. App. P. 49.1; Tex. R. App. P. 10.3(b).

> **B.** **The Coalition's primary authority, *Blackmon*, is not controlling because it does not involve the effect of a stay on a nonsuit and it was not decided under current law.**

In its opinion, the Court cites to the case relied on by Coalition, *University of Texas Medical Branch v. Blackmon*, 195 S.W.3d 98, 100 (Tex. 2006). The Coalition cited this case to support its argument that a motion for nonsuit is effective even when made after the mandatory stay under section 51.014(b) of the Civil Practice and Remedies Code. However, *Blackmon* did not address the effect of the 51.014(b) stay on a nonsuit.

In *Blackmon*, the University of Texas challenged the nonsuit because it had requested costs and because the court of appeals had entered a judgment in its favor, which was withdrawn before the nonsuit was filed. *Id.* at 101.

---

[15] On February 20, 2015, the City filed a Motion to Stay under Texas Rule of Appellate Procedure 29.3. The City asked for an expedited ruling on the motion to stay. However, neither party requested expedited consideration of the Amended Motion to Dismiss.

Nothing in *Blackmon* indicates that either party invoked a stay under Section 51.014(b), and the Court did not address the effect of a stay on the nonsuit.

In addition, the 2003 amendments to Section 51.014(b) were not effective when the notice of appeal in *Blackmon* was filed. The notice of appeal was filed on March 20, 2003. *See* Ex. D, Court of Appeals docket sheet in *Univ. of Tex. Med. Branch at Galveston v. the Estate of Darla Blackmon*, No. 10-03-00093-CV, in the 10th Court of Appeals, from www.search.txcourts.gov.[16] The statute was amended to be effective for notices of appeal filed **after September 1, 2003**. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 103, sec. 51.014, 2003 Tex. Gen. Laws 847, 849, 898.

The prior version of the statute did not mandate that all trial court proceedings be stayed. At the time *Blackmon* was appealed, only ***the commencement of the trial*** was stayed by the interlocutory appeal. *Id*. The parties were free to continue with pretrial proceedings.

The 2003 amendments added the current language:

(b)    An interlocutory appeal under Subsection (a), other than an appeal under Subsection (a)(4), <u>stays</u> the commencement of a trial in the trial court pending resolution of the appeal. <u>An interlocutory appeal under Subsection (a)(3), (5), or (8)</u> **also stays all other proceedings** <u>in the trial court pending resolution of that appeal.</u>

---

[16] The City asks the Court to take judicial notice of the information in this docket sheet showing the date the notice of appeal was filed. Tex. R. Civ. Evid. 201.

10

*Id.* at 849 (emphasis added).

The notice of appeal in *Blackmon* was filed before the amendment to Section 51.014(b) took effect, and the issues related to the nonsuit in *Blackmon* were unrelated to the 51.014(b) stay. It is not controlling on the issue of whether a party may file a nonsuit after there has been a "stay of all other proceedings" under the current version of the statute.

**C.** ***Klein v. Hernandez* is also irrelevant because the nonsuit there was filed *before* the appeal of the plea to the jurisdiction.**

The Coalition also relied on *Klein v. Hernandez*, 315 S.W.3d 1, 4 (Tex. 2010). But *Klein* does not address the effect of the mandatory stay on a later nonsuit because the nonsuit in Klein was filed ***before*** the stay was in effect. Furthermore, the parties in *Klein* "apparently agree[d]" that "the nonsuit in the trial court ended the case against Baylor"—in contrast, the nonsuit here is without prejudice. The fact that the Coalition insists on continuing this case against the City's contractor, which can perform this work only if the City can, demonstrates that the Coalition's goal of stopping the City's work on the project survives despite the nonsuit of the City as a party.

**D. The Coalition should not be allowed to circumvent the automatic stay.**

The Coalition thought it could circumvent the automatic stay provided by Section 51.014(b)—which it described as "trickery"—by nonsuiting the City. (1_RR_127). The Coalition's counsel explained the ploy: "We can go against Conrad, we get the injunction and protect our client's interest." (1_RR_127). The trial court went along.

The result was an injunction entered ostensibly against only the City's contractor, but which everyone knows impacts the City adversely, and without this Court ever deciding the fundamental legal issue of whether the trial court had jurisdiction over this matter at all. The automatic stay provision of Section 51.014(b) should avoid exactly this type of abuse. When a governmental entity is involved in a lawsuit, and the Court's jurisdiction is challenged by a plea, that issue must be finally resolved before the case can proceed against any of the parties. Once an interlocutory appeal is filed, all other proceedings in the trial court, including the right to a nonsuit, come to a halt.

That is even more important in a case like this one where the other defendant is the City's agent in performing a governmental function, and the facts that establish there is no waiver of the City's immunity also establish the contractor's defense, i.e., that there is no violation of the statute. And if the Coalition is ultimately unsuccessful against the contractor, the Coalition could

at any time file another lawsuit asserting the same claims against the City. *See, e.g.*, *Oryx Capital Int'l v. Sage Apartments, LLC*, 167 S.W.3d 432 (Tex. App.—San Antonio 2005, no pet.) (holding nonsuit filed after court-ordered stay was of no effect, and noting plaintiff had already refiled claims in another suit).

The First Court of Appeals considered a situation analogous to this one in *City of Houston v. Swinerton*, 233 S.W.3d 4, 8-9 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In *Swinerton*, the City appealed the denial of its plea to the jurisdiction concerning Swinerton's quantum meruit claim. *Id*. at 6. Swinerton then amended its petition to omit the quantum meruit claim. *Id*. at 8. The City responded that if the plea was dismissed because of the amendment to the pleading, the builder could simply replead the claim after the appeal was dismissed. A ruling on the plea to the jurisdiction, by contrast, would result in a dismissal of that claim with prejudice. *Id*.; *see Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). The nonsuit was not equivalent to the City obtaining a final ruling granting its plea. The court of appeals concluded that "the statutory stay in section 51.014 is analogous to the court-imposed stay in *Oryx*" and that Swinerton's attempt to dismiss its claim without prejudice by amending its petition after the City had invoked the stay was "without force." *Swinerton*, 233 S.W.3d at 9.

The question of the Court's jurisdiction must be heard and ruled on before there are further proceedings in the trial court; that is the purpose of the mandatory stay provision of section 51.014(b). Tex. Civ. Prac. & Rem. Code § 51.014(b). The nonsuit to avoid the jurisdictional issue, filed after the stay, is without force. *Swinterton*, 233 S.W.3d at 9.

### E. The failure to enforce the Section 51.014(b) stay has resulted in a miscarriage of justice and prejudice to the City and the property owners in Freedmen's Town.

Allowing the Coalition to file a nonsuit in violation of the statutory stay and proceeding to a temporary injunction hearing against the contractor is only the beginning of the trial court's error in this matter. Three others deserve particular note:

### 1. The trial court acted outside its jurisdiction—and admitted it.

The trial court acted outside its jurisdiction by declaring that:

Both Freedmen's Town and the brick paved streets situated within the district **constitute "state antiquities landmarks"** as such term is defined by Tex. Admin. Code Title 13, Part 2 § 26.3(3) and used in Tex. Nat. Res. Code § 191.092(a).

(Supp._CR____).[17] The trial court admitted that the designation of a landmark was an administrative decision of the THC:

---

[17] App. 1.

> The court finds that while the evidence in this temporary injunction hearing has shown the site to be a, or to qualify as a state archeological landmark, **that final determination appears to have to be made by the Texas Historical Commission**.

(Supp. RR 96:8-15)[18]. Nevertheless, the court signed the order designating Freedmen's Town and the streets as a landmark. (Supp._CR____).[19]

The Texas Legislature has vested the THC with jurisdiction to designate sites and landmarks as "state archeological landmarks." Tex. Nat. Res. Code §§ 191.051(b)(2) and 191.052; *Walker Cnty. Historical Comm'n*, 608 S.W.2d at 253. Citizens may sue to stop a violation or threatened violation of the statute. Tex. Nat. Res. Code § 191.173. That provision gives a trial court jurisdiction to protect already-designated state archeological landmarks, but it does not vest a trial court with jurisdiction to make the initial determination that a site is entitled to landmark status. As the trial court admitted, whether a site qualifies as a state archeological landmark is an administrative decision delegated by the legislature to the THC.

---

[18] App. 11.

[19] App. 1.

15

**2.    The trial court declared the entirety of Freedmen's Town, and specifically the streets, a landmark without pleading or proof of ownership of the land.**

Basic to designation of a landmark is determining whether the site is on public land or private land. The procedures and criteria for designating landmarks on publically-owned land fall under Tex. Nat. Res. Code § 191.092. The designation of landmarks on privately-owned land falls under Tex. Nat. Res. Code § 191.094. The requirements are different for each. Most significantly here, the designation of a landmark on private land, as is the entirety of Freedmen's Town, requires "written consent of the landowner or landowners." Tex. Nat. Res. Code § 191.094(b). The Coalition presented no evidence of whether the land in Freedmen's Town, including the land under the streets, was publically or privately owned. There was no pleading or evidence the adjacent landowners gave written consent to designation of the streets as landmarks, much less to the entirety of their property in Freedmen's Town. Without proof of the ownership of the land, no decision could be made on landmark status, even by the THC, the agency vested with jurisdiction to make that decision.

### 3. The trial court should not have proceeded in the absence of the City and the adjacent landowners.

Everyone recognizes the City is the real target of this dispute. The City contracted with Conrad to do the work, but it was the City's work and Conrad operated under permits obtained by the City to carry out the City's plan. Enjoining the City's contractor stops the City from performing its work.

Moreover, the Coalition sought declarations regarding what permits from the THC were required to perform the work. Clearly the City had an interest in that issue—it is the City that must obtain the necessary permits from the state, not an outside contractor. The law requires that when declaratory relief is sought, as it was here, all parties interested in the dispute must be joined. Tex. Civ. Prac. & Rem. Code § 37.006.

The adjacent landowners should also have been allowed to intervene. (CR____[20]; 1_RR_12). The court's order is intended to impact the rights of all persons as to Freedmen's Town. (Supp._CR____).[21] It is the landowners whose property rights are affected by a ruling that the streets in Freedmen's Town are protected as landmarks, and it is the landowners (and homeowners) who are

---

[20] App. 9.

[21] App. 1.

most seriously affected by the delay in repairs to their water, drainage, and sewer systems caused by the Coalition's suit.

### F.    The trial court allowed the Coalition to make an end run around governmental immunity.

The Coalition asserts the same claims against Conrad, the City's contractor and agent in this transaction, that it nonsuited as to the City. If this Court allows it, the Coalition and the trial court will have created a playbook for how to avoid challenges to a trial court's jurisdiction in matters involving governmental entities and their contractors.

In performing governmental functions, such as the provision of water and sewer service, repairs to infrastructure, and street maintenance, the contractor acts as the city's agent. *See, e.g.*, *Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*, 333 S.W.3d 736, 747 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (affirming granting of plea to the jurisdiction for law firm that acted as agent of government in collecting taxes). By nonsuiting the City but continuing to litigate the nonsuited claims against the City's contractor, the Coalition is effectively continuing to litigate against the City.

In the same way, if the City has all the necessary permits to do the work in Freedmen's Town, its contractor does too. The Antiquities Code does not

require Conrad to have a permit separate from any permit the City is required to have.

The City's interlocutory appeal of the denial of its plea to the jurisdiction centers on whether the City's governmental immunity was waived because there were "violations or threatened violations" of the Antiquities Code. Tex. Nat. Res. Code § 191.173. Only in that circumstance is there a waiver of governmental immunity. *Id.* The same proof—that there are no "violations or threatened violations" of the Antiquities Code—is also Conrad's defense to the Coalition's claims. Therefore this Court's ruling on the appeal of the plea to the jurisdiction is potentially dispositive of the Coalition's suit against both the City and Conrad. The Coalition's attempt to render the City's appeal moot by a nonsuit against the City should be seen for what it is—a procedural ploy to deprive the City of its interlocutory appeal while at the same time stopping the City from making the necessary repairs under the contract with Conrad.

## G. A party's right to file a nonsuit has exceptions.

The City recognizes that the general rule is that a party has a right to take a nonsuit, but that rule is not without exception. Other appellate courts have recognized that a nonsuit cannot be used to evade the effect of a mandatory stay. *See Oryx*, 167 S.W.3d at 438 (holding appellate court order staying "all further proceedings" prohibited trial court from giving effect to

motion for nonsuit). In *Oryx*, the court held that a nonsuit taken after a court-ordered stay was void and of no effect. *Oryx*, 167 S.W.3d at 438. There, the appellate court ordered a stay similar to that in section 51.014(b), stating that "all further proceedings at the trial court level are STAYED pending resolution of this appeal or further order of this court." *Id.* at 437. Nevertheless, just like the Coalition did here, the plaintiff nonsuited the case at the trial court and moved to dismiss Oryx's appeal as moot. *Id.* The court of appeals held that "[b]ecause this court's order prohibited the continuation of proceedings in the trial court until further notice from this court, the trial court had no authority to entertain Sage's non-suit motion or enter the order of dismissal." *Id.* at 438. An order in violation of a stay is without force. *Swinerton*, 233 S.W.3d at 9.

Similarly, the Texas Supreme Court has held that a nonsuit taken to avoid an unfavorable venue ruling is void. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 258-59 (Tex. 2008) (orig. proceeding). *See also Hendrick Med. Ctr. v. Howell*, 690 S.W.2d 42, 45-46 (Tex. App.—Dallas 1985) (orig. proceeding) ("Permitting a plaintiff to avoid being bound by a venue determination simply by nonsuiting and subsequently refiling the same cause of action against the same parties in a county other than that in which venue was determined to be proper would, in effect, circumvent the legislature's intent that there be only one venue determination in a cause of action.").

The nonsuit the Coalition announced after the City invoked the Section 51.014(b) stay of all proceedings, as well as all other proceedings in the trial court following the stay, should be held void and of no force. The nonsuit should not impede this Court proceeding to decide the City's interlocutory appeal on jurisdiction.

## Conclusion and Prayer

For all of the reasons stated, the City respectfully prays that this Court grant rehearing and deny the Coalition's amended motion to dismiss this appeal and on final hearing, enforce the stay retroactively, and reverse and render judgment in favor of the City on its plea to the jurisdiction.

Respectfully submitted,

DONNA L. EDMUNDSON
City Attorney
JUDITH L. RAMSEY
Chief, General Litigation Section


By:  /s/ *Kathleen Hopkins Alsina*
      Kathleen Hopkins Alsina
      Senior Assistant City Attorney
      SBN:  09977050
      Mary E. (Mary Beth) Stevenson
      Assistant City Attorney
      State Bar No. 24072366
      CITY OF HOUSTON LEGAL
      DEPARTMENT
      900 Bagby, 4th Floor
      Houston, Texas 77002
      832.393.6491 (Telephone)
      832.393.6259 (Facsimile)
      kate.alsina@houstontx.gov
      marybeth.stevenson@houstontx.gov
      judith.ramsey@houstontx.gov

*Attorneys for Appellant*


## Certificate of Compliance

I certify that the foregoing was prepared in Microsoft Word 2010 Version 14.0 in Calisto MT 14 point font; the word-count function shows that, excluding those sections exempted under TRAP 9.4(i)(1), the motion contains 4,402 words.

      /s/ *Kathleen Hopkins Alsina*
      Kathleen Hopkins Alsina

## Certificate of Service

I hereby certify that on this 26th day of March, 2015, a true and correct copy of the foregoing has been served on counsel below via e-service:

Benjamin L. Hall, III
William Van Fleet
The Hall Law Firm
530 Lovett Boulevard
Houston, Texas 77006
bhall@bhalllawfirm.com

*Attorney for Appellee*

　　　　　　　　　　　　　　　 */s/ Kathleen Hopkins Alsina*
　　　　　　　　　　　　　　　 Kathleen Hopkins Alsina

**Exhibits**

Ex. A        Email notice confirming filing of motion

Ex. B        Email notice confirming receipt and acceptance of motion

Ex. C        Email notice of issuance of opinion and order

Ex. D        Docket sheet in *U.T. Med. Branch v. Blackmon*

**Appendix**

App. 1       Order Granting Temporary Injunction (3/2/15)

App. 2       Plaintiff's Verified Second Amended Original Petition and Supplement (2/24/15)

App. 3       Temporary Restraining Order (1/20/15)

App. 4       City's Motion to Deny Plaintiff's Request for Injunctive Relief (2/6/15)

App. 5       City's Plea to the Jurisdiction (2/11/15)

App. 6       Order Denying City's Plea (2/12/15)

App. 7       City's Notice of Interlocutory Appeal (2/12/15)

App. 8       Conrad's Notice of Interlocutory Appeal (3/20/15)

App. 9       Order Striking Petition in Intervention (2/12/15)

App. 10      March 2, 2015 Hearing Transcript Excerpt, pp. 42-43

App. 11      March 2, 2015 Hearing Transcript Excerpt, p. 96

EXHIBIT A

**Holbrook, Bruce - LGL**

| | |
|---|---|
| **From:** | No-Reply@eFileTexas.gov |
| **Sent:** | Tuesday, February 24, 2015 4:46 PM |
| **To:** | Holbrook, Bruce - LGL |
| **Subject:** | eFileTexas.gov - Filing Submitted - 4268396 |



# Filing Submitted

Envelope Number: **4268396**

The filing below has been submitted to the clerks office for review. Please allow up to 24 business hours for clerk office processing.

| Filing Details | |
|---|---|
| **Court** | Courts of Appeals |
| **Date/Time Submitted:** | 2/24/2015 4:44:56 PM |
| **Filing Type:** | Response |
| **Activity Requested:** | EFileAndServe |
| **Filed By:** | Bruce Holbrook |

| Fee Details | |
|---|---|
| This envelope is pending review and fees may change. | |
| Case Fee Information | $0.00 |
| Response | $0.00 |

**Total:** $0.00 (The envelope still has pending filings and the fees are subject to change)

| Document Details | |
|---|---|
| **Lead File:** | Response to Motion to Dismiss with Exhibits.pdf |
| **Lead File Page Count:** | 93 |

| Contact your service provider with any questions |
|---|

1



Need Help? <u>Help</u>
Visit: <u>https://efiletexas.gov/contacts.htm</u>
Email: <u>support@eFileTexas.gov</u>

Please do not reply to this email. It was generated automatically by eFileTexas.gov

EXHIBIT B

## Holbrook, Bruce - LGL

**From:** No-Reply@eFileTexas.gov
**Sent:** Wednesday, February 25, 2015 8:00 AM
**To:** Holbrook, Bruce - LGL
**Subject:** eFileTexas.gov – Filing Accepted - 4268396



# Filing Accepted
Envelope Number: **4268396**

The filing below was reviewed and has been accepted by the clerks office. Be sure to click the link below to retrieve your file stamped copy of the document filed.

| Filing Details | |
|---|---|
| **Court** | Courts of Appeals |
| **Case Number** | 14-15-00138-CV |
| **Case Style** | |
| **Date/Time Submitted** | 2/24/2015 4:44:56 PM |
| **Date/Time Accepted** | 2/25/2015 8:00:07 AM |
| **Accepted Comments** | Thanks for efiling |
| **Filing Type** | Response |
| **Activity Requested** | EFileAndServe |
| **Filed By** | Bruce Holbrook |

| Document Details | |
|---|---|
| **Lead File** | Response to Motion to Dismiss with Exhibits.pdf |
| **Lead File Page Count** | 93 |
| **File Stamped Copy** | https://efile.txcourts.gov/ViewDocuments.aspx?FID=ca71ba57-6118-4c9c-b793-324afb11bfac<br>This link is active for 35 days. |

| Contact your service provider with any questions |
|---|

1



Need Help? [Help](#)
Visit: https://efiletexas.gov/contacts.htm
Email: support@eFileTexas.gov

Please do not reply to this email. It was generated automatically by eFileTexas.gov

EXHIBIT C

**Alsina, Kate - LGL**

**From:** COA14NoticingService@txcourts.gov
**Sent:** Wednesday, February 25, 2015 3:00 AM
**To:** Alsina, Kate - LGL
**Subject:** Notice(s): 14-15-00138-CV
**Attachments:** OPINION ISSD_AFFDIS_FILECOPY.pdf; JUDGMENT.pdf; OPINION.pdf

You have received notice(s) for the following case(s):

14-15-00138-CV
TC #2015-02771
The City of Houston v. Freedmen's Town Preservation Coalition

Files
OPINION ISSD_AFFDIS_FILECOPY.pdf
JUDGMENT.pdf
OPINION.pdf

Thank you,
Christopher Prine, Clerk
14th Court of Appeals

Do not reply to this message. If you have questions, please contact the Court at 713-274-2800.

EXHIBIT D

## CASE: 10-03-00093-CV

DATE FILED: 03/20/2003

CASE TYPE: MISCELLANEOUS CIVIL

STYLE: THE UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON

V.: THE ESTATE OF DARLA BLACKMON, BY ITS BENEFICIARY SHEILA SHULTZ AND SHEILA SHULTZ INDIVIDUALLY

ORIG PROC: NO

TRANSFER FROM:

TRANSFER IN:

TRANSFER CASE:

TRANSFER TO:

TRANSFER OUT:

PUB SERVICE: WEST PUBLISHING

## APPELLATE BRIEFS

| DATE | EVENT TYPE | DESCRIPTION | DOCUMENT |
|------|-----------|-------------|----------|
| NO BRIEFS. | | | |

## CASE EVENTS

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|------|-----------|-------------|-------------|----------|
| 02/11/2013 | CASE FILE WAS DESTROYED PER RETENTION SCHEDULE | | | |
| 10/16/2012 | LETTER TO TRIAL COURT CLERK FOR RETURN OF RECORD | | | |
| 07/28/2006 | CASE STORED | | | |
| 07/28/2006 | MANDATE ISSUED BY SUPREME COURT. | | | |
| 06/12/2006 | ORDER ENTERED | | DISMISSED-WANT OF JURISDICTION | |
| 01/31/2006 | CASE FORWARDED TO HIGHER COURT | | | |
| 09/08/2005 | PETITION FOR REVIEW FILED IN THE SUPREME COURT | | | |
| 07/29/2005 | MOTION TO EXTEND TIME TO FILE PETITION FOR REVIEW | | | |

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|------|------------|-------------|-------------|----------|
| 06/22/2005 | RETENTION TIME CASE FILE WILL BE RETAINED | RETAIN CIVIL CASE FOR 6 YEARS | | |
| 06/22/2005 | JUDGMENT ENTERED BY THIS COURT | | | |
| 06/22/2005 | OPINION ISSUED | | DISSENTING OPINION | DISSENTING OPINION [ HTML/13 KB ] |
| 06/22/2005 | OPINION ISSUED | | AFFIRMED | |
| 06/22/2005 | MOTION TO DISMISS FOR WANT OF JURISDICTION | | MOTION OR WRIT DENIED | |
| 06/22/2005 | ORDER ENTERED DISPOSING OF A PROCESS (CONSOLIDATE) | | MOTION OR WRIT DENIED | |
| 05/27/2005 | RESPONSE TO MOTION | APPELLEE | | |
| 05/24/2005 | RESPONSE TO MOTION | APPELLANT | | |
| 05/17/2005 | MOTION TO DISMISS FOR WANT OF JURISDICTION | APPELLEE | | |
| 04/27/2005 | JUDGMENT WITHDRAWN BY THIS COURT. | | | |
| 04/27/2005 | OPINION WITHDRAWN | | | |
| 04/27/2005 | OPINION ISSUED | | DISSENTING OPINION | DISSENTING OPINION [ HTML/18 KB ] |
| 04/27/2005 | ORDER ENTERED | | | |
| 04/27/2005 | MOTION FOR REHEARING GRANTED | APPELLANT | | |
| 03/29/2005 | MOTION FOR EXTENSION OF TIME TO FILE RESPONSE | APPELLANT | MOTION OR WRIT GRANTED | |
| 03/29/2005 | RESPONSE TO MOTION | APPELLANT | | |
| 03/22/2005 | MOTION FOR EXTENSION OF TIME TO FILE RESPONSE | APPELLANT | | |
| 03/08/2005 | RESPONSE REQUESTED TO MOTION FOR REHEARING. | | | |
| 10/29/2004 | MOTION FOR REHEARING FILED | APPELLEE | | |
| 10/19/2004 | MOTION FOR ORAL ARGUMENT | APPELLEE | DISMISSED AS MOOT | |
| 10/13/2004 | RETENTION TIME CASE FILE WILL BE RETAINED | RETAIN CIVIL CASE FOR 6 YEARS | | |

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|---|---|---|---|---|
| 10/13/2004 | JUDGMENT ENTERED BY THIS COURT | | | |
| 10/13/2004 | MEMORANDUM OPINION ISSUED | | REVERSED & RENDERED | MEMORANDUM OPINION [ HTML/20 KB ] |
| 10/13/2004 | SUBMITTED | | | |
| 09/22/2004 | CASE ADVANCED WITHOUT ORAL ARGUMENT | | | |
| 09/22/2004 | MOTION FOR ORAL ARGUMENT | APPELLEE | MOTION OR WRIT DENIED | |
| 09/15/2003 | REPLY BRIEF FILED | APPELLANT | | |
| 08/27/2003 | MOTION FOR ORAL ARGUMENT | APPELLEE | | |
| 08/22/2003 | CASE READY TO BE SET | | | |
| 08/22/2003 | BRIEF FILED, ORAL ARGUMENT NOT REQUESTED | APPELLEE | | |
| 08/13/2003 | BRIEF RECEIVED, NOT FILED | APPELLEE | | |
| 07/16/2003 | MOTION FOR EXTENSION OF TIME TO FILE BRIEF DISPOSED | FURTHER EXTENSIONS DISFAVORED | MOTION OR WRIT GRANTED | |
| 07/10/2003 | MOTION FOR EXTENSION OF TIME TO FILE BRIEF | APPELLEE | | |
| 07/03/2003 | BRIEF FILED, ORAL ARGUMENT REQUESTED | POSTMARKED TIMELY | | |
| 06/11/2003 | MOTION FOR EXTENSION OF TIME TO FILE BRIEF DISPOSED | NO FURTHER EXTENSIONS OF TIME WILL BE ENTERTAINED | MOTION OR WRIT GRANTED | |
| 06/06/2003 | MOTION FOR EXTENSION OF TIME TO FILE BRIEF | APPELLANT | | |
| 05/21/2003 | CASE ACCELERATED AND SET FOR SUBMISSION. | | | |
| 05/21/2003 | CLERK'S RECORD FILED | | | |
| 05/16/2003 | ACCELERATED APPEAL - FIRST NOTICE | | | |
| 05/12/2003 | REPORTER'S RECORD FILED | | | |
| 05/07/2003 | COURT REPORTER'S REQUEST FOR ADDITIONAL TIME | COURT REPORTER | MOTION OR WRIT GRANTED | |
| 05/01/2003 | COURT REPORTER'S REQUEST FOR ADDITIONAL TIME | COURT REPORTER | | |

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|------|-----------|-------------|-------------|----------|
| 04/02/2003 | COURT REPORTER'S REQUEST FOR ADDITIONAL TIME | COURT REPORTER | MOTION OR WRIT GRANTED | |
| 04/01/2003 | COURT REPORTER'S REQUEST FOR ADDITIONAL TIME | COURT REPORTER | | |
| 03/20/2003 | DOCKETING STATEMENT FILED | | | |
| 03/20/2003 | NOTICE OF APPEAL FILED - CIVIL CASE | | | |

## CALENDARS

| SET DATE | CALENDAR TYPE | REASON SET |
|----------|---------------|------------|
| 02/11/2013 | CASE STORED | CASE DESTROYED |

## PARTIES

| PARTY | PARTYTYPE | REPRESENTATIVE |
|-------|-----------|----------------|
| | APPELLANT | |
| THE UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON | APPELLANT | HARRY DECKARD |
| TEXAS, THE STATE OF | CRIMINAL - STATE OF TEXAS | |
| SHULTZ, SHEILA | APPELLEE | STEPHEN A. KHOURY |
| BLACKMON, SARLA | APPELLEE | STEPHEN A. KHOURY |

## TRIAL COURT INFORMATION

COURT: 52ND DISTRICT COURT

COUNTY: CORYELL

COURT JUDGE: HONORABLE PHILLIP H. ZEIGLER

COURT CASE: COT-01-33769

COURT REPORTER:

PUNISHMENT:

APPENDIX 1

For Official Governmental Use Only - Do Not Disseminate to the Public: 64469295 - Page 1 of 6

F I L E D
Chris Daniel
District Clerk

MAR 0 2 2015

Time:_____ 4:03 pr
Harris County, Texas

By_____ frc.
Deputy

CAUSE NO. 2015-02771

FREEDMEN'S TOWN PRESERVATION § IN THE DISTRICT COURT
COALITION AND CATHERINE §
ROBERTS §
§
§ HARRIS COUNTY, TEXAS
VS. §
§
§
CITY OF HOUSTON AND CONRAD §
CONSTRUCTION CO., LTD. § 80TH JUDICIAL DISTRICT

## ORDER GRANTING TEMPORARY INJUNCTION

On February 12, 2015, came on for hearing the Application for Injunctive Relief filed by Freedmen's Town Preservation Coalition (the "Coalition") and Catherine Roberts ("Roberts"), Plaintiffs herein. At the outset of the hearing, the Court struck the attempted intervention in this case filed by Robin Street Square Townhome Association, Crosby Street Square Townhome Association and Valda Bush. The Court further denied Defendant City of Houston's Plea to the Jurisdiction.

During the presentation of Plaintiffs' evidence, Defendant City of Houston advised the Court that it had filed an interlocutory appeal of the Court's denial of the City's Plea to the Jurisdiction and insisted that the injunction hearing must immediately be halted pending resolution of such interlocutory appeal. As is their right, Plaintiffs announced in open court and on the record that they were non-suiting their claims against the City. Because the City's Plea to the Jurisdiction and its interlocutory appeal did not affect Plaintiffs' claims and causes of action against Defendant Conrad Construction Co., Ltd. ("Conrad"), Conrad remains as the sole defendant in this cause.

1

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

The Court thereafter recessed the hearing until February 16, 2015, in order to give Conrad sufficient time to retain counsel to represent it in this case.

On February 16, 2015, by agreement of the parties the Court continued the temporary restraining order previously entered herein and recessed the temporary injunction hearing until March 2, 2015.

On March 2, 2015, the Court continued hearing the evidence presented by Plaintiffs and Conrad. The Court, having heard the evidence presented and having heard and considered the arguments of the respective counsel for Plaintiffs and Conrad, is of the opinion and so finds that:

1. Freedmen's Town, including all of its bricked streets, are located in a district located in the Fourth Ward of the City of Houston, Harris County, Texas, which was founded and settled by emancipated slaves following the conclusion of the American Civil War.

2. Over a century ago, the black residents of Freedmen's Town themselves paid for and/or contributed funds to provide bricks to pave over the then-dirt travel ways that are now streets located inside the district.

3. These street bricks were laid with religious, cultural and historically peculiar characteristics dating back to African origins, including cultural, religious and historical traditions of the west African tribe of the Yoruba [indigenous to modern Nigeria and western Benin]. The bricked streets include deliberate efforts to arrange the bricks in a "crossroads pattern" used by freed slaves in Texas to ward off evil spirits and to promote well-being and honesty in the community.

2

For Official Governmental Use Only - Do Not Disseminate to the Public: 64469295 - Page 2 of 6

For Official Governmental Use Only - Do Not Disseminate to the Public: 64469295 - Page 3 of 6

4. In 1984, the Texas Historical Commission (the "THC") nominated Freedmen's Town to the federal government to be placed on the National Register of Historic Places as an "Historic District." That nomination was approved the same year, and Freedmen's Town has been a designated national Historic District for over thirty years.

5. In 1992, the Houston City Council passed a resolution designating Freedmen's Town as an Historic District.

6. Freedmen's Town constitutes a "designated historic district" as that term is defined in Tex. Admin. Code Title 13, Part 2, § 26.3(22).

7. The brick paved streets within Freedmen's Town constitute "structures" as that term is defined in Tex. Admin. Code Title 13, § 26.3(66).

8. The brick paved streets within Freedmen's Town further constitute structures of historical, cultural and religious interest pursuant to Tex. Natural Res. Code Ann. § 191.092(b) because they (a) were significantly associated with an event that symbolizes an important principle or ideal, (b) represent a distinctive architectural type and have value as examples of a period, style, or construction technique, and (c) are important as part of the heritage of a religious organization, ethnic group, or local society.

9. Both Freedmen's Town and the brick paved streets situated within the district constitute "state antiquities landmarks" as such term is defined by Tex. Admin. Code Title 13, Part 2, § 26.3(63) and used in Tex. Natural Res. Code Ann. § 191.092(a).

10. Pursuant to a construction contract by and between the City and Conrad to repair or replace water and sewer lines underneath the streets, avenues and alleys lying

3

within Freedmen's Town, the City and Conrad intend to remove, alter, damage, destroy, salvage, or excavate the bricks which pave the streets of Freedmen's Town.

11. Pursuant to the provisions of Tex. Natural Res. Code Ann. §§ 191.093 and 191.131, Conrad is required to obtain and/or have in its possession the appropriate permit(s) from the THC in order to remove, alter, damage, destroy, salvage, or excavate the brick paved streets situated within Freedmen's Town, but Conrad does not possess all required permits.

12. As citizens of the state of Texas, the Coalition, its members, and Roberts have standing to seek and obtain injunctive relief prohibiting Conrad or any other contractor from any violation or threatened violation of the Texas Antiquities Code pursuant to Tex. Natural Res. Code Ann. § 173(a).

13. Because Plaintiffs seek injunctive relief expressly granted by Tex. Natural Res. Code Ann. § 173(a), they need not either allege or prove that they will suffer irreparable harm if Conrad is not restrained and enjoined as requested in Plaintiffs' Application.

14. Alternatively, if the bricks paving the streets of Freedmen's Town are removed, damaged, excavated or altered in any way, their unique religious, cultural and historical significance will be irretrievably lost, and Plaintiffs thus have no adequate remedy at law. Also, at the commencement of the temporary injunction hearing, Conrad and the City stipulated on the record that Plaintiffs would sustain immediate and irreparable harm if an injunction were not granted as requested by Plaintiffs

For Official Governmental Use Only - Do Not Disseminate to the Public: 64469295 - Page 4 of 6

4

For Official Governmental Use Only - Do Not Disseminate to the Public: 64469295 - Page 5 of 6

15. Unless restrained and enjoined from doing so, Conrad will remove, alter, damage, destroy, salvage, or excavate the brick paved streets situated within Freedmen's Town without an appropriate permit from the THC in violation of Tex. Natural Res. Code Ann. §§ 191.093 and 191.131, and Plaintiffs will suffer irreparable harm as previously stipulated by the parties.

Based upon the foregoing findings, and pursuant to the Court's express grant of the power to restrain and enjoin any violation or threatened violation of the Texas Antiquities Code pursuant to Tex. Natural Res. Code Ann. § 173(a), the Court is of the opinion that Plaintiffs' Application for Injunctive Relief should be *GRANTED*.

It is therefore *ORDERED* that Conrad Construction Co., Ltd., its agents, employees, servants and representatives, and all those acting in concert with them, be and hereby are prohibited from in any manner, directly or indirectly, removing, altering, damaging, destroying, covering, salvaging, rearranging, disturbing or excavating any bricks from any of the streets, alleys and avenues located within the geographical boundaries of Freedmen's Town Historic District from the date of this Order until judgment is entered upon final trial upon the merits of this case.

Plaintiffs are *ORDERED* to post a bond in conformance with the law in the amount of $5,000, which is already posted to support the prior TRO .

Trial of this cause is set to commence on the 4th day of May, 2015 at 9:00 (a.m.)/p.m.

*SIGNED* this 2nd day of March, 2015 at 4:00 p.m.

Larry Weiman Presiding Judge,

5

PRESIDING JUDGE

For Official Governmental Use Only - Do Not Disseminate to the Public: 64469295 - Page 6 of 6



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   March 26, 2015

Certified Document Number:        64469295 Total Pages:  6

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

APPENDIX 2

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384617 - Page 1 of 11

## CAUSE NO. 2015-02771

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION, CATHERINE ROBERTS AND GLADYS HOUSE | § § § § | IN THE DISTRICT COURT |
| | § | HARRIS COUNTY, TEXAS |
| VS. | § § | |
| | § | |
| CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD. | § § § | 80TH JUDICIAL DISTRICT |

### PLAINTIFF'S VERIFIED SECOND AMENDED ORIGINAL PETITION AND APPLICATION FOR INJUNCTIVE RELIEF

TO THE HONORABLE DISTRICT JUDGE:

Freedmen's Town Preservation Coalition and Catherine Roberts (collectively the "Coalition"), and Gladys House, Individually, Plaintiffs herein, file this Verified Second Amended Original Petition and Application for Injunctive Relief complaining of Conrad Construction Co., Ltd. ("Conrad") and would respectfully show the Court the following:

### I.

### DISCOVERY PLAN

1. Plaintiffs intend for discovery to be conducted pursuant to Tex.R.Civ.Pro. 190.3, Level 2.

### II.

### PARTIES

2. The Coalition is an unincorporated association all of whose members are residents and citizens of Houston, Harris County, Texas. Roberts is a member of the Coalition and is also a resident and citizen of Houston, Harris County, Texas. House is

1

a member of the Coalition and is also a Texas citizen who lives in Freedmen's Town located in Fourth ward, Houston, Texas.

3.      Conrad is a limited partnership organized and existing under the laws of the state of Texas which has already been served with citation and appeared herein and, thus, no further service is required upon Conrad.

## III.

## JURISDICTION AND VENUE

4.      Pursuant to Tex. Natural Res. Code Ann. § 191.173(a), this Court possesses jurisdiction to enjoin the threatened illegal actions sought to be undertaken by Conrad as hereafter more fully described.

5.      Pursuant to Tex. Natural Res. Code Ann. § 191.173(b), venue is proper in this Court because all of the threatened illegal actions described below are intended to be taken in Harris County, Texas.

## IV.

## FACTUAL ALLEGATIONS

6.      This case centers upon the preservation of a unique historical site located in the City of Houston, Texas—specifically the protection and preservation of historically, religiously and culturally significant brick streets paid for and laid by freed slaves and their descendants over a century ago in the historic district of Freedmen's Town, a section of Houston's Fourth Ward.

7.      As the name implies, Freedmen's Town was founded and settled by slaves freed by President Lincoln's 1863 Emancipation Proclamation, enforced by the

2

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384617 - Page 2 of 11

Thirteenth Amendment to the United States Constitution, at the conclusion of the Civil War.

8.      Originally, Freedmen's Town's streets were merely dirt roads, subject to frequent flooding in Houston's frequent rainy seasons and producing muddy pools conducive to mosquito breeding and the spread of malaria and other diseases. The residents of Freedmen's Town thus repeatedly petitioned the City to pave their streets to rid these pestilences, but were always rebuffed.

9.      Thus, over 100 years ago Freedmen's Town's residents took matters into their own hands. Using their own hard-earned savings, and—to borrow the famous Churchillian phrase—their own blood, sweat, toil and tears, the residents of Freedmen's town not only paid for bricks—at the rate of a dollar per brick—but laid the bricks themselves.

10.     These street bricks were not laid haphazardly, but in the religious tradition and culture of the west African tribe of the Yoruba [indigenous to modern Nigeria and western Benin]. More specifically, the bricks were laid, in accordance with Yoruba religious culture and tradition, to bless the streets and their intersections from the destructive interference from, and the influence of, evil spirits.

11.     In 1984, the Texas Historical Commission (the "THC") itself nominated Freedmen's Town to the federal government to be placed on the National Register of Historic Places as an "Historic District." That nomination was approved the same year, and Freedmen's Town has been a designated national Historic District for over thirty years.

3

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384617 - Page 3 of 11

12. In 1992, the Houston City Council followed suit and passed a resolution designating Freedmen's Town as an Historic District.

13. In 2007, the City of Houston (the "City") considered digging up those bricks to replace the water and sewer lines beneath the streets. But Rep. Sheila Jackson Lee and then-mayor Bill White entered into an agreement pursuant to which the City received $500,000 in federal grant funds to study utilizing trenchless technology to replace the lines without disturbing the historic bricks—an alternative which the City had utilized in 1986 to repair and replace water and sewer lines in the wealthy subdivision of River Oaks without destroying or otherwise disturbing that area's streets and walkways.

14. By 2014, however, the City inexplicably abandoned its 2007 agreement and, using a combination of federal and city funds, let a contract to Conrad to tear up Freedmen's Town's brick streets in order to replace the water and sewer lines. This decision led to confrontations between Conrad's workers and demonstrators preventing progress on this project. More such demonstrations and confrontations will likely follow any resumption of the project.

15. Freedmen's Town and its constituent components, including its brick paved streets, constitute sites, objects, buildings, artifacts, implements, and/or locations of historical, archeological, scientific, religious or educational interest. Accordingly, pursuant to Tex. Natural Res. Code § 191.092(a) and (b), the bricks and streets in Freedmen's Town constitute state archeological landmarks.

4

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384617 - Page 4 of 11

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384617 - Page 5 of 11

16. Pursuant to Tex. Natural Res. Code § 191.093, landmarks "may not be removed, altered, damaged, destroyed, salvaged, or excavated without a contract with or permit from the [THC]."

17. Moreover, under Tex. Natural Res. Code § 191.131(b), "[n]o person, firm, or corporation may conduct an operation on any landmark without first obtaining a permit and having the permit in his or its possession at the site of the operation, or conduct the operation in violation of the provisions of the permit."

18. Although the construction contract between the City and Conrad explicitly requires the bricks in the subject streets to be removed, excavated and likely altered or destroyed, in whole or in part, neither the City nor Conrad have ever obtained either a contract with or an appropriate permit from the THC to do so.

## V.

### CAUSES OF ACTION

19. Pursuant to Tex. Natural Res. Code § 191.173(a), any citizen of the state of Texas may file suit to restrain and enjoin any violation or threatened violation of § 191.001, *et seq.* Thus, the Coalition possesses a statutory cause of action to enforce the provisions of the Texas Antiquities Code.

20. In addition, pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 37.001 *et seq.*, the Coalition further seeks the judgment of this Court declaring that (a) Conrad is required to obtain and keep in its possession at all times an appropriate permit from the THC expressly permitting it to perform any construction work which would remove, alter, damage, destroy, salvage or excavate any bricks from any of the streets, alleys and

5

avenues located within the geographical boundaries of Freedmen's Town, and (b) Conrad has not obtained such a permit from the THC.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384617 - Page 6 of 11

## INJUNCTIVE RELIEF

21.     Pursuant to the express provisions of Tex. Natural Res. Code § 191.173(a), the Coalition seeks injunctive relief, both temporary and permanent, prohibiting Conrad from in any manner, directly or indirectly, removing, altering, damaging, destroying, covering, salvaging, rearranging, disturbing or excavating any bricks from any of the streets, alleys and avenues located within the geographical boundaries of Freedmen's Town Historic District without first following all the procedures for and obtaining from the THC either a contract or permit expressly permitting Conrad to do so.

22.     Because the Coalition is statutorily entitled to injunctive relief pursuant to Tex. Natural Res. Code § 191.173(a), it need not allege nor prove that irreparable harm will occur in the event that Conrad's construction project in Freedmen's Town is not immediately and permanently restrained and enjoined.

23.     Even so, unless Conrad is immediately and permanently restrained and enjoined from removing, altering, damaging, destroying, covering, salvaging, rearranging, disturbing or excavating any bricks from any of the streets, alleys and avenues located within the geographical boundaries of Freedmen's Town Historic District, the Coalition—indeed every citizen of Houston—will be irreparably harmed because the religious, cultural and historic significance of the bricks, and the pattern in which they were laid, will forever be lost and can never be restored.  Accordingly, the Coalition has no adequate remedy at law.

7

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384617 - Page 7 of 11

## VII.

### ATTORNEYS FEES

24.     Pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 37.001 *et seq.*, the Coalition further requests that it have and recover from Conrad its reasonable and necessary attorneys fees as found by the trier of fact incurred and to be incurred by the Coalition through final trial on the merits, together with all post-trial matters relating to the entry of a final judgment by this Court, and for all reasonable and necessary attorneys fees in the event that Conrad should unsuccessfully appeal any adverse judgment to a court of appeals and/or to the Texas Supreme Court

**WHEREFORE, PREMISES CONSIDERED,** the Coalition respectfully requests that Conrad be cited and required to appear and answer herein, and that the Coalition have and recover the following relief:

(1) The order of this Court temporarily, and upon final trial, permanently restraining and enjoining the City and Conrad from in any manner, directly or indirectly, removing, altering, damaging, destroying, covering, salvaging, rearranging, disturbing or excavating any bricks from any of the streets, alleys and avenues located within the geographical boundaries of Freedmen's Town Historic District without first following all the procedures for and obtaining from the THC either a contract or permit expressly permitting the City and Conrad to do so;

(2) The judgment of this Court declaring that (a) Conrad is required to obtain and keep in its possession at all times an appropriate permit from the THC expressly permitting it to perform any construction work which would remove,

8

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384617 - Page 8 of 11

alter, damage, destroy, salvage or excavate any bricks from any of the streets, alleys and avenues located within the geographical boundaries of Freedmen's Town, and (b) Conrad has not obtained such a permit from the THC;

(3) The Coalition have and recover from Conrad its reasonable and necessary attorneys fees through the trial and any post-trial matters relating to the entry of a final judgment herein, together with reasonable and necessary attorneys fees in the event that Conrad should unsuccessfully appeal any adverse judgment to a court of appeals and/or to the Texas Supreme Court;

(4) The Coalition have and recover from Conrad post-judgment interest on all attorneys fees awarded to the Coalition at the highest rate allowed by law;

(5) The Coalition have its costs; and

(6) The Coalition have such other and further relief to which it may show itself to be justly entitled.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384617 - Page 9 of 11

9

Respectfully submitted,

/s/**Benjamin L. Hall**

Benjamin L. Hall III
Texas Bar No. 08743745
bhall@bhalllawfirm.com
William L. Van Fleet II
bvfleet@comcast.net
Texas Bar No. 20494750
The Hall Law Firm
530 Lovett Blvd.
Houston, TX 77006
(713) 942-9600 (Telephone)
(713) 942-9566 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above and foregoing document was forwarded to all counsel and/or *pro se* parties of record in accordance with the Texas Rules of Civil Procedure on February 24, 2015.

/s/**Benjamin L. Hall**

Benjamin L. Hall III

10

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384617 - Page 10 of 11

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION , CATHERINE ROBERTS AND GLADYS HOUSE | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§<br>§ | HARRIS COUNTY, TEXAS |
| CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD. | §<br>§ | 80TH JUDICIAL DISTRICT |

## VERIFICATION

| | |
|---|---|
| **STATE OF TEXAS** | §<br>§<br>§ |
| **COUNTY OF HARRIS** | § |

Before me, the undersigned authority, personally appeared Gladys House whose identity is known to me, and after being duly sworn stated upon her oath that the foregoing Second Amended Petition and Application for Injunctive Relief and all the facts and assertions contained in same are true and correct and within her personal knowledge.

_Gladys House_
**GLADYS HOUSE**

SWORN TO AND SUBSCRIBED before me the undersigned authority on this 24 day of ___February___, 2015.

_[signature]_
**Notary Public, State of Texas**

My commission expires: 7/24/2017

[seal]


KATHERINE L MCGIBBON
MY COMMISSION EXPIRES
July 24, 2017

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384617 - Page 11 of 11



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this __March 26, 2015__

Certified Document Number: __64384617 Total Pages: 11__

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

2/24/2015 5:46:14 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 4269683
By: CASARES, ALEXANDRO
Filed: 2/24/2015 5:46:14 PM

For Official Governmental Use Only - Do Not Disseminate to the Public: 64384618 - Page 1 of 1

## Affidavit of Catherine Roberts

Before me, the undersigned authority, appeared Mrs. Catherine Roberts and after being sworn upon her oath, stated the following:

My name is Catherine Roberts. I am over the age of 21, have never been convicted of any crime, and have personal knowledge of the facts stated herein and all such facts are true and correct.

I am presently serving as the Vice President of The Freedmen's Town Preservation Coalition. The Coalition was formed in June 2014 with the mission of preserving and protecting the historical properties and culture in Freedmen's Town, located in the Fourth Ward of Houston, Texas. The Coalition's regular meetings are held on Mondays where we discuss action items and receive reports on our progress of preserving Freedmen's Town.

On September 21, 2014, a request for public information was forwarded to both The Texas Historical Commission and The Texas Department of Transportation to obtain information about all projects, funding and public meetings held to determine action items relating to The Freedmen's Town. The FOIA sought records from January 1, 2006 to present. After being initially stonewalled by these agencies (and receiving no documents), we asked Judge Blackman to assist with obtaining the requested documents. After Judge Blackman's assistance, we finally obtained documents from both agencies. None of the documents contained any permits or contracts from The Texas Historical Commission authorizing the City of Houston or The Conrad Construction Co., Ltd to remove or repair the brick streets in Freedmen's Town. Our task force, formed in 2007, was especially looking for such THC permits and contracts pertaining to Freedmen's Town, especially any projects that could affect the bricked streets located there. None was found. We have also requested proof of such approvals from the City of Houston and none has been provided from the Texas Historical Commission.

All of our requests for public information to establish that the Texas Historical Commission has either granted a "contract" to work on the streets in Freedmen's Town or "permit" allowing for the bricked streets to be removed, altered or rearranged have turned up no documents or authorizations from THC.

This concludes my affidavit.

Catherine Roberts

SWORN TO ON THIS 20 DAY OF JANUARY, 2015.

Notary Public


KATHERINE L MCGIBBON
MY COMMISSION EXPIRES
July 24, 2017


HERINE L MCGIBBON
MISSION EXPIRES
ly 24, 2017



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   March 26, 2015

Certified Document Number:        64384618 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

For Official Governmental Use Only - Do Not Disseminate to the Public: 64389889 - Page 1 of 4

## CAUSE NO. 2015-02771

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION AND CATHERINE ROBERTS | §<br>§<br>§ | IN THE DISTRICT COURT |
| | §<br>§ | HARRIS COUNTY, TEXAS |
| VS. | §<br>§ | |
| CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD. | §<br>§<br>§ | 80TH JUDICIAL DISTRICT |

### PLAINTIFFS' SUPPLEMENT TO VERIFIED SECOND AMENDED ORIGINAL PETITION AND APPLICATION FOR INJUNCTIVE RELIEF

TO THE HONORABLE DISTRICT JUDGE:

Freedmen's Town Preservation Coalition and Catherine Roberts (collectively the "Coalition"), Plaintiff herein, files this Supplement to Verified Second Amended Original Petition and Application for Injunctive Relief complaining of Conrad Construction Co., Ltd. ("Conrad") and would respectfully show the Court the following:

1. Due to a typographical error, in subsection (1) of their claims for relief in their Verified Second Amended Original Petition and Application for Injunctive Relief filed on February 24, 2015, Plaintiffs requested that the Court temporarily and permanently restrain *both* the City of Houston and Conrad Construction Co., Ltd. ("Conrad") from removing, altering, damaging, destroying, covering, salvaging, rearranging, disturbing or excavating any bricks from any of the streets, alleys and avenues located within the geographical boundaries of Freedmen's Town Historic District without first following all the procedures for and obtaining from the THC either a contract or permit expressly permitting the City and Conrad to do so.

1

For Official Governmental Use Only - Do Not Disseminate to the Public: 64389889 - Page 2 of 4

2. Plaintiffs, however, non-suited the City of Houston from this case in open court on February 12, 2015, and did not and do not intend to seek any relief from or against the City of Houston pursuant to their Verified Second Amended Original Petition and Application for Injunctive Relief.

3. Accordingly, Plaintiffs file this Supplement to Verified Second Amended Original Petition and Application for Injunctive Relief to delete all references to the City of Houston in subsection (1) of the petition's claims for relief, so that subsection (1) shall now state: "The order of this Court temporarily, and upon final trial, permanently restraining and enjoining Conrad from in any manner, directly or indirectly, removing, altering, damaging, destroying, covering, salvaging, rearranging, disturbing or excavating any bricks from any of the streets, alleys and avenues located within the geographical boundaries of Freedmen's Town Historic District without first following all the procedures for and obtaining from the THC either a contract or permit expressly permitting Conrad to do so."

WHEREFORE, PREMISES CONSIDERED, the Coalition respectfully requests that Conrad be cited and required to appear and answer herein, and that the Coalition have and recover the following relief:

(1) The order of this Court temporarily, and upon final trial, permanently restraining and enjoining Conrad from in any manner, directly or indirectly, removing, altering, damaging, destroying, covering, salvaging, rearranging, disturbing or excavating any bricks from any of the streets, alleys and avenues located within the geographical boundaries of Freedmen's Town

2

For Official Governmental Use Only - Do Not Disseminate to the Public: 64389889 - Page 3 of 4

Historic District without first following all the procedures for and obtaining from the THC either a contract or permit expressly permitting Conrad to do so;

(2) The judgment of this Court declaring that (a) Conrad is required to obtain and keep in its possession at all times an appropriate permit from the THC expressly permitting it to perform any construction work which would remove, alter, damage, destroy, salvage or excavate any bricks from any of the streets, alleys and avenues located within the geographical boundaries of Freedmen's Town, and (b) Conrad has not obtained such a permit from the THC;

(3) The Coalition have and recover from Conrad its reasonable and necessary attorneys fees through the trial and any post-trial matters relating to the entry of a final judgment herein, together with reasonable and necessary attorneys fees in the event that Conrad should unsuccessfully appeal any adverse judgment to a court of appeals and/or to the Texas Supreme Court;

(4) The Coalition have and recover from Conrad post-judgment interest on all attorneys fees awarded to the Coalition at the highest rate allowed by law;

(5) The Coalition have its costs; and

(6) The Coalition have such other and further relief to which it may show itself to be justly entitled.

3

Respectfully submitted,

/s/Benjamin L. Hall
Benjamin L. Hall III
Texas Bar No. 08743745
bhall@bhalllawfirm.com
William L. Van Fleet II
bvfleet@comcast.net
Texas Bar No. 20494750
The Hall Law Firm
530 Lovett Blvd.
Houston, TX 77006
(713) 942-9600 (Telephone)
(713) 942-9566 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above and foregoing document was forwarded to all counsel and/or *pro se* parties of record in accordance with the Texas Rules of Civil Procedure on February 25, 2015.

/s/Benjamin L. Hall
Benjamin L. Hall III

4

For Official Governmental Use Only - Do Not Disseminate to the Public: 64389889 - Page 4 of 4



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   March 26, 2015

Certified Document Number:        64389889 Total Pages:  4

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

APPENDIX 3

For Official Governmental Use Only - Do Not Disseminate to the Public: 63899369 - Page 1 of 3

Cause No. 2015 02771

p. 3

T ROR Y
ST BN X
CASO

Freedmen's Town Preservation Coalition

In the 80TH Judicial
District Court, Harris
County, Texas

v.

The City of Houston and Conrad Construction
Co., Ltd

**F I L E D**
Chris Daniel
District Clerk

JAN 2 0 2015

Time:_____
Harris County, Texas

By_____
Deputy

## Temporary Restraining Order

Pending before the Court is Plaintiff's Verified Original Petition and Request for Immediate Injunctive Relief. After considering the allegations in the verified petition, along with the attached exhibits, and given the urgency of the relief requested (given that the complained of conduct is scheduled to commence in less than 12 hours), and considering the express statutory authority permitting Plaintiff to seek injunctive relief as requested, and the fact that irreparable harm will occur if relief is not immediately granted, the Court finds that Plaintiff's Request for an Immediate Temporary Restraining Order has merit, is well-founded and should in all things be GRANTED.

Further, the Court specifically finds that an ex parte Temporary Restraining Order is needed given the shortness of time before destructive efforts will commence. As alleged, if the historic artifacts and structures are removed, altered, rearranged or destroyed, their original historical integrity will be lost forever. Further, the harm sought to be avoided will not be able to be redressed because the threatened conduct will result in irreplaceable loss of the protected historical structures. Where an item or thing is irreplaceable, and the destruction of same is imminent, irreparable harm is clearly established and the court so finds. Further, the fact that The Historical Commission, the

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

National Register of Historical Places and the City of Houston have all recognized the significance of Freedmen's Town and its unique characteristics, coupled with the clear indication in the law to preserve and protect the history of this nation, state and city, militate in favor of preserving these irreplaceable historical sites until a hearing can be conducted on the legal rights of the respective parties in this suit. The Court, therefore, concludes that irreparable harm will result to the plaintiff and the historical character of Freedmen's Town unless this temporary restraining order is entered.

It is therefore ORDERED, ADJUDGED AND DECREED, AND THE DEFENDANTS, THE CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD, and all of their employes, agents and officers, are enjoined and immediately restrained from taking any of the following actions:

-Defendants, jointly and severally, are enjoined from removing, altering, disturbing, damaging, covering or in any way rearranging any of the bricks from any street, alley or avenue within the geographic boundaries of Freedmen's Town;

-Defendants, jointly and severally, are enjoined from removing, rearranging, altering, destroying, damaging, disturbing or covering any of the streets, bricks, Yoruba pattern or structures paid for or placed in Freedmen's Town by formerly enslaved men and women; and

-Defendants, jointly and severally, are immediately enjoined from taking any further action that will cause the removal, covering, rearranging, disturbance or damaging of any of the bricks, pavers, street coverings or other structures paid for by formerly enslaved men and women within Freedmen's Town.

For Official Governmental Use Only - Do Not Disseminate to the Public: 63899369 - Page 2 of 3

Section 191.173(a) of the Texas Natural Resources Code statutorily entitles Plaintiff to seek injunctive relief to prevent any violation of Section 191.001, *et seq.* The Court sets a bond of $ 5000.00 to be paid by Plaintiff. This temporary restraining is effective immediately upon signing by the court and shall continue in force as provided by law but not later than the conclusion of the temporary injunction hearing scheduled herein, whichever is earlier.

A temporary injunction hearing is scheduled for the 30th day of January, 2015, at 1:30 a.m./p.m. in the 80th District Court.

Done this 20th day of January, 2015.

_____
Ancillary Judge

For Official Governmental Use Only - Do Not Disseminate to the Public: 63899369 - Page 3 of 3



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:        63899369 Total Pages:  3

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

APPENDIX 4

CAUSE NO. 2015-02771

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION, PLAINTIFF, | § § § | IN THE DISTRICT COURT |
| V. | § § | HARRIS COUNTY, TEXAS |
| THE CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD, DEFENDANTS. | § § § § | 80TH JUDICIAL DISTRICT |

**CITY OF HOUSTON'S MOTION TO DENY PLAINTIFF'S
REQUEST FOR INJUNCTIVE RELIEF AS A MATTER OF LAW**

Defendant the City of Houston ("the City") files this Motion to Deny Plaintiff's Request

for Injunctive Relief as a Matter of Law as follows:

**I.      Summary**

1.      Plaintiff alleges a single ground for injunctive relief -- that the City cannot proceed with

the Freedmen's Town Brick Street Project "without a contract or permit from the Texas

Historical Commission" under the Texas Antiquities Code.  Pl. Orig. Pet. at p. 2-3.  The City

does have a permit.  Following the Court's January 28 scheduling conference, counsel for the

City first learned that the Texas Historical Commission ("THC") had, in fact, issued a permit.

On September 12, 2014, The Commission issued "Freedmen's Town Brick Streets, City of

Houston," Archeological Permit No. 7021 to the City ("Permit No. 7021"). Permit No. 7021 is

attached hereto as **Exhibit A-1**

2.      Although Permit No. 7021 speaks for itself and facially satisfies the requirement that the

City obtain "a permit" from the THC, Mark Wolf, Executive Director of the THC, confirms that

"Permit # 7021 is the only permit needed for work to proceed on the Freedmen's Town Brick

Street Project."  See **Exhibit A**, Affidavit of Mark Wolfe, at ¶ 7.  Finally, Permit No. 7021 is in a

form that Plaintiff's counsel admits "complies with the law."  There being no question that the

1

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152036 - Page 1 of 10

City has a "permit from the [THC]," Plaintiff's request for a temporary injunction, its sole claim in this litigation, should be denied as a matter of law.

3.        As independent and alternative grounds, Plaintiff's request should be denied because (1) the City was not required to secure an permit or approved contract from the THC for the Freedmen's Project because Freedmen's Town has not been designated as a "State Archeological Landmark" and therefore not subject to the permit or contract requirement, and (2) Plaintiff lacks standing to seek injunctive relief under the Code.

## II.        Background

4.        On January 20, 2015, the City of Houston's Public Works Division began lawful work for the renovation of brick streets in Freedmen's Town (the "Freedmen's Project"), as approved by the Houston City Council and the THC. The City's renovation plan includes measures to temporarily remove paving bricks, restore them and then use them to repave the streets in the same or substantially the same manner and pattern as before.  At the same time, the City will make long-overdue infrastructure upgrades, including the replacement of inlets, the installation of new water mains, sanitary mains, storm pipe, fire hydrants and the relocation of water meters. The Freedmen's Project will be overseen by an on-site archeologist approved by the THC.

5.        On the same day the Freedmen's Project began, Plaintiff applied for and received a temporary restraining order arguing that Freedmen's Town has been designated as a "historical site" and, on the basis of such designation, the Texas Antiquities Code prohibits, "any alteration, removal or destruction of such structures without either (1) an approved contract by the THC or (2) an express permit granted by the THC."  Pl. Orig. Pet. at p.2 (*citing* TEX. NAT. RES. CODE §§ 191.093 and 191.095)[1].  The City moved to dissolve this temporary restraining order on the basis

---

[1]   The Antiquities Code, in its entirety, is attached hereto as **Exhibit B**.

2

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152036 - Page 2 of 10

that it had complied with the requirements of the Antiquities Code, but this request was denied. The issue of the temporary injunction is now pending before the Court.

### III.    Potential Cost of Delay to the Public

6.    The City's contractor was on its first morning of work on the Freedmen's Project when work was stopped by Plaintiff's temporary restraining order.  The contractor has mobilized considerable resources to the Freedmen's Project and those resources stand ready and willing to resume work.  Time is of the essence as further delay could result in termination of the Freedmen's Town contract.  Should the contract be terminated, the City and its taxpayers could be liable to the contractor for certain costs and expenses estimated to be $100,000.  In addition, the Freedmen's Town contract would have to be rebid.  The City estimates that the rebid contract price would be in excess of $2,000,000 above the current contract price. The City therefore respectfully requests that the Court issue its ruling on the temporary injunction at the earliest possible date, but no later than February 16.

### IV.    Argument and Authority

7.    A temporary injunction is an extraordinary remedy that does not issue unless the party seeking relief pleads and proves three specific elements: (1) a cause of action, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *E.g., Intercont'l Terminals Co., LLC v. Vopak N. Am., Inc*., 354 S.W.3d 887, 891 (Tex.App.-Houston [1st Dist.] 2011, no pet.).  As a general proposition the grant or denial of a temporary injunction rests within the sound discretion of the trial court.  *E.g., Placemaker, Inc. v. Greer*, 654 S.W.2d 830, 832 (Tex.App.-Tyler 1983, writ dism'd).  "However, the judicial discretion to grant a temporary injunction does not extend to a case which presents a question of law only and in which the facts are established and contrary to petitioners' right to prevail." *Id*.

3

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152036 - Page 4 of 10

**A.** **The THC issued Freedmen's Town Brick Streets, Archeological Permit No. 7021 to the City on September 12, 2014**

8. The named permittee on Permit No. 7021 is the "City of Houston" and the title is "Freedmen's Town Brick Streets, City of Houston." Exhibit A-1, at p. 1. The Permit was issued by Pat Mercado-Allinger on behalf of the THC. *Id.* Ms. Mercado-Allinger is employed by the THC and part of her job duties is to sign off on permits such as Permit No. 7021. See Exhibit A, at ¶ 2. Permit No. 7021 expires on September 12, 2024. Exhibit A-1, at p.1.

9. With the permit in hand, Plaintiff has no legal grounds to insist on the continued delay of the Freedmen's Project. However, lest there be any doubt, Mark Wolfe, Executive Director of the THC, confirms that, "Archeology Permit #7021 is granted for monitoring to be performed on a potential or designated landmark or other public land known as Freedmen's Town Brick Streets, City of Houston, located in Harris County at the Intersection of Wilson and Andrews Streets, 2 blocks south of west Dallas Street and 7 blocks west of Heiner Street." Exhibit A at ¶ 3. Mr. Wolfe further confirms that "Archeology Permit #7021 is the only permit needed for work to proceed on the Freedmen's Town Brick Streets Project." Exhibit A, at ¶7.

10. Further, at the January 26 hearing on the City's Motion to Dissolve the Temporary Restraining Order, counsel for Plaintiff offered certain exhibits to the Court. Plaintiff's Exhibits Nos. 12-14 were "actual permits" issued by the THC. See certified copy of the transcript of the January 26 hearing, attached hereto as **Exhibit C**, at 19:6-24. Plaintiff's Exhibit No. 14 was a THC Archeology Permit No. 6595, prepared for a survey of certain parking spaces in San Marcos on the exact same form as Permit No. 7021. Permit No. 6595 is attached hereto as **Exhibit D**.

11. Mr. Hall's purpose in doing so was to demonstrate what a compliant permit looks like and includes:

4

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152036 - Page 5 of 10

> And finally, Your Honor, I brought to you another permit, Tab 14. Again, that complies with the law. It indicates who owns and controls the same, where it's to be performed, sponsored by the principal investigator, when the permit takes effect, when it's going to expire, precisely what the statute says the permit must contain.

Exhibit C, at 19:17-23. Based on the foregoing, there can be no doubt that the City has a permit from the THC for the Freedmen's Project. Consequently, Plaintiff's request for a temporary injunction should be denied.

**B.    The City was not required under the Antiquities Code[2] to secure a permit or approved contract before proceeding with the Freedmen's Project**

12.    Even more fundamentally, however, the City could but was not (and in the future will not be) required to obtain a permit from the THC for infrastructure and other public works projects in Freedmen's Town. The Antiquities Code provides for tiered layers of protection for historical buildings and sites. Freedmen's Town is designated as a Historic District in the National Register of Historic Places. As a historic district, Freedmen's Town is subject to Subsection C of the Antiquities Code. Pursuant to that Code, if a "project is inside a designated historic district," the "person primarily responsible for the project" must notify the THC. TEX. NAT. RES. CODE §§ 191.0525(a) and (d). The THC then has the option to investigate and determine if further action is warranted. TEX. NAT. RES. CODE §§ 191.0525(a). There is no "permit or contract" requirement under Section 191.0525, as Plaintiff has alleged, just "notice" to the THC. There is no dispute that the City provided notice to the THC in advance of the Freedmen's Project.

13.    Plaintiff, however, seeks relief under subchapter D of the Antiquities Code, which affords higher levels of protection to "State Archeological Landmarks." Pl. Orig. Pet. at p.2. The THC is empowered by Subchapter D to designate "objects, buildings, artifacts, implements, and

---

[2] As discussed *infra*, the City did secure an archeology permit for the Freedmen's Project. However, that permit was not required or sought to comply with the protections set forth in Sections 191.093 or 191.095 of the Code. Rather, it was sought out of an abundance of caution based on historical references in the project documents.

5

locations of historical, archeological, scientific, or educational interest" as "State Archeological Landmarks." TEX. NAT. RES. CODE §§ 191.092(a). Designated State Archeological Landmarks "may not be removed, altered, damaged, destroyed, salvaged or excavated without a contract or permit from the [THC]." TEX. NAT. RES. CODE §§ 191.093.

14. The parties assign different interpretations to the forgoing language in 191.092(a), which reads, in relevant part:

> Sites, objects, buildings, artifacts, implements, and locations of historical, archeological, scientific, or educational interest . . . are state archeological landmarks and are eligible for designation.

TEX. NAT. RES. CODE §§ 191.092(a). The difference in interpretation stems from the phrase "are state archeological landmarks and are eligible for designation." The City interprets 191.092(a) as conferring jurisdiction on the THC to designate sites, objects, buildings, artifacts, implements, and locations nominated as having "historical, archeological, scientific or educational interest" as State Archeological Landmarks. Upon official designation by the THC, State Archeological Landmarks are then entitled to protection under the Subchapter D, including the "permit or contract" protections in Sections 191.093 and 191.095. This interpretation is consistent with other portions Subchapter D, which set forth the nomination and designation process by which sites, objects, buildings, artifacts, implements, and locations may become State Archeological Landmarks. TEX. NAT. RES. CODE §§ 191.092(c)-(h).

15. Plaintiff, however, attempts to put the cart before the horse in believing that unspecified sites, objects, buildings, artifacts, implements, and locations are, simply by their inherent nature, State Archeological Landmarks and subject to heightened protections under Subchapter D irrespective of whether the THC has designated them as State Archeological Landmarks.

6

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152036 - Page 6 of 10

16. In determining the meaning of a statute, a court must consider the entire act, its nature and object, and the consequences that would follow from each construction. *E.g., Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991). Interpretations of statutes which would produce absurd results are to be avoided. *Id.*

17. Under the City's interpretation, one wishing to "remove, alter, damage, destroy, salvaged or excavate" any "site, object, building, artifact, implement, or location" that might (or might not) be of "historical, archeological, scientific or educational interest" need only to check and see if the THC has made a State Archeological Landmark designation to know if he or she needs to obtain a permit or approved contract from the THC prior to commencing work. Under Plaintiff's interpretation, the question is impossibly vague, as no person or entity has made an official determination as to whether the alleged "historical, archeological, scientific or educational interest" rises to a level meriting legal protection. Stated another way, Plaintiff's interpretation is so wildly subjective that in the most if not all cases one would have no way to know whether a permit or approved contract is required to proceed with work on a site, building, object or location of any age or note.

18. Given the foregoing, it should come as no surprise that Texas case law and other requisite authorities wholly agree with the City's interpretation. In *Texas Antiquities Committee v. Dallas County Community College District*, the Dallas Community College District filed suit for an injunction against the Texas Antiquities Committee[3] to set aside the Committee's order denying a permit to demolish three buildings owned by the College District. 554 S.W.2d 924 (Tex.1977). As here, the location at issue was listed on a National Register, but was not designated as a State

---

[3] In 1995, the 74th Legislature abolished the Texas Antiquities Committee and made the Texas Historical Commission the legal custodian of the Antiquities Code.

7

Archeological Landmark under the Antiquities Code. At the time, the relevant portion of the Antiquities Code was substantively the same as the current version:

> All other sites, objects, buildings, artifacts, implements, and locations of historical, archeological, scientific, or educational interest . . . are hereby declared to be State Archeological Landmarks and are the sole property of the State of Texas.

Vernon's Ann.Texas Civ.St. Art. 6145-9 (repealed). Adopting the City's interpretation, the Texas Supreme Court described the Committee's authority under the Antiquities Code as follows:

> The Antiquities Code does not give the Antiquities Committee authority over buildings in the National Register; instead, the Code only gives the Committee authority over buildings which the Committee has designated as a State Archeological Landmark. Since the Committee has not designated the buildings as State Archeological Landmarks, the College District does not need the Committee's permission before demolishing the buildings.

*Id*. at 926.

19. In *Board of Regents v. Walker County Historical Commission*, the trial court issued a temporary injunction preventing restoration work on Sam Houston's Woodward home if and until a permit was issued by the THC. 608 S.W.2d 252 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). Appellants argued since the Woodward home was not designated as a State Archeological Landmark, the THC not authorized nor required to issue a permit to appellants. *Id.* at 253. Citing to *Texas Antiquities Committee v. Dallas County Community College District*, the appellate court agreed and dissolved the temporary injunction. *Id*.

20. The City's interpretation is further bolstered by the Texas Attorney General's Office, which, citing to the above cases, opined:

> [T]he Antiquities Committee has no jurisdiction over buildings which it has not designated as state archeological landmarks, and its permission is therefore not needed before such a building is altered . . . it is the only reasonable construction of the Antiquities Code provisions. One can hardly be expected to know that a

8

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152036 - Page 8 of 10

particular item is a 'landmark,' and is therefore subject to the permit requirement, until the Antiquities Committee formally designates it as such.

Op. Tex. Att'y Gen. No. MW-378 (1981). Freedman's Town has not been designated as a State Archeological Landmark. Ex. B, at ¶ 9. In accordance with Texas case law and the rules of statutory construction, as a matter of law the City was not required to get a permit from the THC prior to commencing work on the Freedmen's Project.

**C.      Plaintiff lacks standing to seek injunctive relief**

21.      Plaintiff represents itself as an "unincorporated association of citizens located in Houston, Texas." Pl. Orig. Pet. at p. 1. Plaintiffs assert standing under Section 191.173(a) of the Antiquities Code. *Id.* at p. 2. That section confers standing to "a Citizen of the State of Texas." TEX. NAT. RES. CODE §§ 191.173(a). By its own pleading, Plaintiff is not a "citizen," it is an "unincorporated association." Accordingly, it lacks standing under the Antiquities Code.

**V.      Prayer**

For the foregoing reasons, Defendants request that the Court deny Plaintiff's request for a temporary injunction as a matter of law.

Respectfully submitted,

DONNA L. EDMUNDSON
City Attorney
JUDITH L. RAMSEY
Chief, General Litigation Section

 /s/ *Darah Eckert*
Darah Eckert
Senior Assistant City Attorney
SBN 24007141
Lisa A. Ketai
Senior Assistant City Attorney
SBN 11362400
Brian Amis

9

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152036 - Page 9 of 10

Senior Assistant City Attorney
SBN 24040424
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street
Houston, Texas 77002
832.393.6348 (telephone)
832.393.6259 (facsimile)
darah.eckert@houstontx.gov
*Attorneys for Defendant the City of Houston*

## Certificate of Service

I hereby certify that on this 6th day of February, 2015, a true and correct copy of the foregoing has been served on counsel below via e-service, email and/or facsimile.

Benjamin Hall, III
The Hall Law Firm
530 Lovett Boulevard
Houston, Texas 77006

*/s/ Darah Eckert* _____
Darah Eckert

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152036 - Page 10 of 10



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   February 12, 2015

Certified Document Number:        64152036 Total Pages:  10

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

COUNTY OF TRAVIS          §
                                     §           A F F I D A V I T

STATE OF T E X A S          §

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152037 - Page 1 of 4

Before me, the undersigned official, on this day appeared Mark Wolfe who, being duly sworn by me deposed and stated under oath as follows:

1.      My name is Mark Wolfe. I am over twenty-one years of age, am of sound mind, have never been convicted of a crime, and am otherwise competent to testify. I am the Executive Director of the Texas Historical Commission. I am the custodian of documents for the Commission and have personal knowledge of the information below;

2.      Attached as Exhibit "A" is the State of Texas, Texas Antiquities Committee ("TAC") Archeology Permit #7021. The permit was issued on September 12, 2014 and signed by Pat Mercado-Allinger, on behalf of the Commission. Ms. Mercado Allinger is currently employed with the Commission and it is part of her job duties to sign off on permits such as archeology permit #7021. She is a designated representative of the Texas Historical Commission and is permitted to sign off on this permit in accordance with the Texas Administrative Code, Title 13, Part 2, Chapter 26, Subchapter D, Rule section 26.21.

3.      TAC Archeology Permit #7021 is granted for monitoring to be performed on a potential or designated landmark or other public land known as Freedmen's Town Brick Streets, City of Houston, located in Harris County at the Intersection of Wilson and Andrews Streets, 2 blocks south of west Dallas Street and 7 blocks west of Heiner Street.

4.      TAC Archeology Permit #7021 states that the land is owned or controlled by the City of Houston, that the permit sponsor is the Texas Department of Transportation and lists the principal investigator/investigation firm as Jon C. Lohse of Moore Archeological Consulting, Inc.

5.      TAC Archeology Permit #7021 is to be in effect for a period of 10 years and 0 months and will expire on September 12, 2024. During the preservation, analysis, and preparation of a final report or until further notice by the Commission, artifacts, field notes, and other data gathered during the investigation will be kept temporarily at Moore Archeological Consulting. Upon completion of the final permit report, the same artifacts, field notes, and other data will be placed in a permanent curatorial repository at Sam Houston Museum in Huntsville.



EXHIBIT A

6. The scope of work under TAC Archeology Permit #7021 shall consist of conduct archaeological monitoring for the City of Houston Freedmen's Town Brick Street Utility Relocations Project.

7. TAC Archeology Permit #7021 is the only permit needed for work to proceed on the Freedmen's Town Brick Streets Project. A Texas Historical Commission Antiquities Permit for Historic Buildings & Structures is not needed for this project.

8. Exhibit "A" is a true and correct copy of the TAC Archeology Permit #7021. Exhibit "B" is a true and correct copy of two field verification and determination letters related to written comments made by Linda Henderson on December 22, 2104 regarding her site visit conducted on December 15, 2014. Exhibit "C" is a true and correct copy of Ms. Henderson's Field notes from the December 15, 2014 site visit. These Exhibits are governmental records maintained in the normal course of business of the Texas Historical Commission by employees under my direction and control.

9. After a thorough search of our records I have determined that the Freedmen's Town in Houston is designated as a Historical District. However, it is not designated as a State Archeological Landmark nor is there a pending application to designate Freedmen's Town in Houston as a State Archeological Landmark. My search also revealed that Freedmen's Town is not designated as a Traditional Cultural Property.

10. It is the regular practice of the Texas Historical Commission or a representative of the Texas Historical Commission with knowledge of the act or event recorded to make or transmit the information to be included in the records; and the records were made at or near the time or reasonably soon thereafter. The records attached to this affidavit are the originals or exact duplicates of the originals.

All statements of fact contained herein are true and correct and are within my personal knowledge."



M ESTHER GARZA
NOTARY PUBLIC
State of Texas
Comm. Exp. 12-04-2017
NOTARY WITHOUT BOND

Mark Wolfe

SWORN TO and SUBSCRIBED before me by *Mark Wolfe* on this the 28th day of January 2015, 2015, to certify which witness my hand and seal of office.

M. Esther Garza

NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152037 - Page 2 of 4

*State of Texas*
# TEXAS ANTIQUITIES COMMITTEE
## ARCHEOLOGY PERMIT # 7021

*This permit is issued by the Texas Historical Commission, hereafter referred to as the Commission, represented herein by and through its duly authorized and empowered representatives. The Commission, under authority of the Texas Natural Resources Code, Title 9, Chapter 191, and subject to the conditions hereinafter set forth, grants this permit for:*

**Monitoring**

*To be performed on a potential or designated landmark or other public land known as:*

**Title:** **Freedmen's Town Brick Streets, City of Houston**
**County:** **Harris**
**Location:** **Intersection of Wilson and Andrews Streets, 2 blocks south of west Dallas Street and 7 blocks west of Heiner Street**

*Owned or Controlled by: (hereafter known as the Permittee):*

**City of Houston**
**611 Walker Street (15th Floor)**
**Houston, TX 77002**

*Sponsored by (hereafter known as the Sponsor*

**Texas Department of Transportation**
**125 East 11th Street**
**Austin, TX 78701**

*The Principal Investigator/Investigation Firm representing the Owner or Sponsor is:*

**Jon C. Lohse**
**Moore Archeological Consulting, Inc.**
**3511 Houston Avenue, Suite B**
**Houston, TX 77009**

*This permit is to be in effect for a period of:*

**10 Years and 0 Months**

*and Will Expire on:*

**09/12/2024**

*During the preservation, analysis, and preparation of a final report or until further notice by the Commission, artifacts, field notes, and other data gathered during the investigation will be kept temporarily at:*

**Moore Archeological Consulting**

*Upon completion of the final permit report, the same artifacts, field notes, and other data will be placed in a permanent curatorial repository at:*

**Sam Houston Museum in Huntsville**

*Scope of Work under this permit shall consist of:*

**Conduct archaeological monitoring for the City of Houston Freedmen's Town Brick Streets Utility Relocation Project. For details, see proposal submitted with permit application.**

## EXHIBIT A-1

## This permit is granted on the following terms and conditions:

1) This project must be carried out in such a manner that the maximum amount of historic, scientific, archeological, and educational information will be recovered and preserved and must include the scientific, techniques for recovery, recording, preservation and analysis commonly used in archeological investigations. All survey level investigations must follow the state survey standards and the THC survey requirements established with the projects sponsor(s).

2) The Principal Investigator/Investigation Firm, serving for the Owner/Permittee and/or the Project Sponsor, is responsible for insuring that specimens, samples, artifacts, materials and records that are collected as a result of this permit are appropriately cleaned, and cataloged for curation. These tasks will be accomplished at no charge to the Commission, and all specimens, artifacts, materials, samples, and original field notes, maps, drawings, and photographs resulting from the investigations remain the property of the State of Texas, or its political subdivision, and must be curated at a certified repository. Verification of curation by the repository is also required, and duplicate copies of any requested records shall be furnished to the Commission before any permit will be considered complete.

3) The Principal Investigator/Investigation Firm serving for the Owner/Permittee, and/or the Project Sponsor is responsible for the publication of results of the investigations in a thorough technical report containing relevant descriptions, maps, documents, drawings, and photographs. A draft copy of the report must be submitted to the Commission for review and approval. Any changes to the draft report requested by the Commission must be made or addressed in the report, or under separate written response to the Commission. Once a draft has been approved by the Commission, one (1) printed, unbound copy of the final report containing at least one map with the plotted location of any and all sites recorded and two copies of the report in tagged PDF format on an archival quality CD or DVD shall be furnished to the commission. One copy must include the plotted location of any and all sites recorded and the other should not include the site location data. A paper copy and an electronic copy of the completed Abstracts in Texas Contract Archeology Summary Form must also be submitted with the final report to the Commission. (Printed copies of forms are available from the Commission or also online at www.thc.state.tx.us.)

4) If the Owner/Permittee, Project Sponsor or Principal Investigator/Investigation Firm fails to comply with any of the Commission's Rules of Practice and Procedure or with any of the specific terms of this permit, or fails to properly conduct or complete this project within the allotted time, the permit will fall into default status. A notification of Default status shall be sent to the Principal Investigator/Investigation Firm, and the Principal Investigator will not be eligible to be issued any new permits until such time that the conditions of this permit are complete or, if applicable, extended.

5) The Owner/Permittee, Project Sponsor, and Principal Investigator/Investigation Firm, in the conduct of the activities hereby authorizes, must comply with all laws, ordinances and regulations of the State of Texas and of its political subdivisions including, but not limited to, the Antiquities Code of Texas; they must conduct the investigation in such a manner as to afford protection to the rights of any and all lessees or easement holders or other persons having an interest in the property and they must return the property to its original condition insofar as possible, to leave it in a state which will not create hazard to life nor contribute to the deterioration of the site or adjacent lands by natural forces.

6) Any duly authorized and empowered representative of the Commission may, at any time, visit the site to inspect the fieldwork as well as the field records, materials, and specimens being recovered.

7) For reasons of site security associated with historical resources, the Project Sponsor (if not the Owner/Permittee), Principal Investigator, Owner, and Investigation Firm shall not issue any press releases, or divulge to the news media, either directly or indirectly, information regarding the specific location of, or other information that might endanger those resources, or their associated artifacts without first consulting with the Commission, and the State agency or political subdivision of the State that owns or controls the land where the resource has been discovered.

8) This permit may not be assigned by the Principal Investigator/Investigation Firm, Owner/Permittee, or Project Sponsor in whole, or in part to any other individual, organization, or corporation not specifically mentioned in this permit without the written consent of the Commission.

9) Hold Harmless: The Owner/Permittee hereby expressly releases the State and agrees that Owner/Permittee will hold harmless, indemnify, and defend (including reasonable attorney's fees and cost of litigation) the State, its officers, agents, and employees in their official and/or individual capacities from every liability, loss, or claim for damages to persons or property, direct or indirect of whatsoever nature arising out of, or in any way connected with, any of the activities covered under this permit. The provisions of this paragraph are solely for the benefit of the State and the Texas Historical Commission and are not intended to create or grant any rights, contractual or otherwise, to any other person or entity.

10) Addendum: The Owner/Permittee, Project Sponsor and Principal Investigator/Investigation Firm must abide by any addenda hereto attached.

Upon a finding that it is in the best interest of the State, this permit is issued on 09/12/2014.

Pat Mercado-Allinger, for the
**Texas Historical Commission**



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:        64152037 Total Pages:  4

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

NATURAL RESOURCES CODE

TITLE 9. HERITAGE

CHAPTER 191. ANTIQUITIES CODE

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 191.001.  TITLE.  This chapter may be cited as the Antiquities Code of Texas.

Acts 1977, 65th Leg., p. 2683, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.


Sec. 191.002.  DECLARATION OF PUBLIC POLICY.  It is the public policy and in the public interest of the State of Texas to locate, protect, and preserve all sites, objects, buildings, pre-twentieth century shipwrecks, and locations of historical, archeological, educational, or scientific interest, including but not limited to prehistoric and historical American Indian or aboriginal campsites, dwellings, and habitation sites, archeological sites of every character, treasure imbedded in the earth, sunken or abandoned ships and wrecks of the sea or any part of their contents, maps, records, documents, books, artifacts, and implements of culture in any way related to the inhabitants, pre-history, history, natural history, government, or culture in, on, or under any of the land in the State of Texas, including the tidelands, submerged land, and the bed of the sea within the jurisdiction of the State of Texas.

Acts 1977, 65th Leg., p. 2683, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.


Sec. 191.003.  DEFINITIONS.  In this chapter:
    (1)  "Committee" means the Texas Historical Commission.
    (2)  "Landmark" means a state archeological landmark.
    (3)  "State agency" means a department, commission, board, office, or other agency that is a part of state government and that is created by the constitution or a statute of this state.  The term

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 1 of 18



**EXHIBIT B**

includes an institution of higher education as defined by Section 61.003, Texas Education Code.

(4)  "Political subdivision" means a local governmental entity created and operating under the laws of this state, including a city, county, school district, or special district created under Article III, Section 52(b)(1) or (2), or Article XVI, Section 59, of the Texas Constitution.

Acts 1977, 65th Leg., p. 2683, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1983, 68th Leg., p. 2001, ch. 364, Sec. 1, eff. Sept. 1, 1983;  Acts 1987, 70th Leg., ch. 948, Sec. 1, eff. Sept. 1, 1987;  Acts 1995, 74th Leg., ch. 109, Sec. 18, eff. Aug. 30, 1995.

Sec. 191.004.  CERTAIN RECORDS NOT PUBLIC INFORMATION.  (a) Information specifying the location of any site or item declared to be a state archeological landmark under Subchapter D of this chapter is not public information.

(b)  Information specifying the location or nature of an activity covered by a permit or an application for a permit under this chapter is not public information.

(c)  Information specifying details of a survey to locate state archeological landmarks under this chapter is not public information.

Added by Acts 1981, 67th Leg., p. 959, ch. 365, Sec. 1, eff. June 10, 1981.

SUBCHAPTER B. ADMINISTRATIVE PROVISIONS

Sec. 191.021.  COMPLIANCE WITH OPEN MEETINGS ACT AND ADMINISTRATIVE PROCEDURE AND TEXAS REGISTER ACT.  (a)  Repealed by Acts 1995, 74th Leg., ch. 109, Sec. 29, eff. Aug. 30, 1995.

(b)  If an institution of higher education notifies the committee in a timely manner (as established by the committee's rules) that it protests the proposed designation of a building or land under its control as a landmark, the matter becomes a contested case under the provisions of Sections 12 through 20 of the Administrative Procedure and Texas Register Act.  In the conduct of proceedings under the Administrative Procedure and Texas Register

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 2 of 18

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 3 of 18

Act, both the hearing officer in his or her recommendations to the committee and the committee in its determinations of findings of fact and conclusions of law shall consider, in addition to such other objective criteria as the committee may establish pursuant to Section 191.091 of this chapter:

(1)  that the primary mission of institutions of higher education is the provision of educational services to the state's citizens;

(2)  that the authority for expenditure of the portion of the state's resources allocated to institutions of higher education for construction and repair purposes is entrusted to the governing boards of institutions of higher education for the purpose of the furtherance of the primary mission of the respective institutions of higher education;

(3)  whether the benefit to the state from landmark designation outweighs the potential inflexibility of use that may be a consequence of the designation; and

(4)  whether the cost of remodeling and/or restoration that might be required under the permit procedures of the committee if the building were designated as a landmark may be so substantially greater than remodeling under procedures established by law for the review of remodeling projects for higher education buildings not so designated as to impair the proper use of funds designated by the state for educational purposes at the institution.

(c)  If an institution of higher education notifies the committee in a timely manner (as established by the committee's rules) that it protests the terms of a permit proposed to be granted to an institution of higher education under this chapter, the matter becomes a contested case under the provisions of Sections 12 through 20 of the Administrative Procedure and the Texas Register Act.  The hearing officer in his or her recommendations to the committee and the committee in its determination of findings of fact and conclusions of law shall consider:

(1)  that the primary mission of institutions of higher education is the provision of educational services to the state's citizens;

(2)  that the authority for expenditure of the portion of the state's resources allocated to institutions of higher education

for construction and repair purposes is entrusted to the governing boards of institutions of higher education for the purpose of the furtherance of the primary mission of the respective institutions of higher education;

(3)  whether the legislature has provided extra funds that may be required to implement any proposed requirements;

(4)  the effect of any proposed requirements on maintenance costs;

(5)  the effect of any proposed requirements on energy costs;  and

(6)  the appropriateness of any proposed permit requirements to the uses to which a public building has been or will be dedicated by the governing board of the institution of higher education.

(d)  Weighing the criteria set forth in Subsections (b) and (c) of this section against the criteria it adopts pursuant to Section 191.092 of this chapter and such criteria as it may adopt with regard to permit requirements, the committee shall designate a building or land under the control of an institution of higher education as a landmark or include a requirement in a permit only if the record before the committee establishes by clear and convincing evidence that such designation or inclusion would be in the public interest.

Added by Acts 1983, 68th Leg., p. 2003, ch. 364, Sec. 6, eff. Sept. 1, 1983.  Amended by Acts 1995, 74th Leg., ch. 109, Sec. 29, eff. Aug. 30, 1995.
Amended by:
Acts 2009, 81st Leg., R.S., Ch. 1182 (H.B. 3632), Sec. 5, eff. June 19, 2009.


SUBCHAPTER C. POWERS AND DUTIES

Sec. 191.051.  IN GENERAL.  (a)  The committee is the legal custodian of all items described in this chapter that have been recovered and retained by the State of Texas.

(b)  The committee shall:

(1)  maintain an inventory of the items recovered and retained by the State of Texas, showing the description and depository of them;

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 4 of 18

(2)    determine the site of and designate landmarks and remove from the designation certain sites, as provided in Subchapter D of this chapter;

(3)    contract or otherwise provide for discovery operations and scientific investigations under the provisions of Section 191.053 of this code;

(4)    consider the requests for and issue the permits provided for in Section 191.054 of this code;

(5)    prepare and make available to the general public and appropriate state agencies and political subdivisions information of consumer interest describing the functions of the committee and the procedures by which complaints are filed with and resolved by the committee;  and

(6)    protect and preserve the archeological and historical resources of Texas.

Acts 1977, 65th Leg., p. 2685, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1983, 68th Leg., p. 2002, ch. 364, Sec. 5, eff. Sept. 1, 1983;  Acts 1987, 70th Leg., ch. 948, Sec. 4, eff. Sept. 1, 1987.

Sec. 191.052.  RULES.  The committee may promulgate rules and require contract or permit conditions to reasonably effect the purposes of this chapter.

Acts 1977, 65th Leg., p. 2685, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.

Sec. 191.0525.  NOTICE REQUIRED.  (a)  Before breaking ground at a project location on state or local public land, the person primarily responsible for the project or the person's agent shall notify the committee.  The committee shall promptly determine whether:

(1)    a historically significant archeological site is likely to be present at the project location;

(2)    additional action, if any, is needed to protect the site;  and

(3)    an archeological survey is necessary.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 5 of 18

(b)   Except as provided by Subsection (c), the committee shall make a determination not later than the 30th day after the date the committee receives notice under Subsection (a).  If the committee fails to respond in the 30-day period, the person may proceed with the project without further notice to the committee.  If the committee determines that an archeological survey is necessary at the project location, the project may not commence until the archeological survey is completed.

(c)   The committee shall make a determination not later than the 15th day after the date the committee receives notice under Subsection (a) for project locations regarding oil, gas, or other mineral exploration, production, processing, marketing, refining, or transportation facility or pipeline projects.  If the committee fails to respond in the 15-day period, the person may proceed with the project without further notice to the committee.  If the committee determines that an archeological survey is necessary at the project location, the project may not commence until the archeological survey is completed.

(d)   A project for a county, municipality, or an entity created under Section 52, Article III, or Section 59, Article XVI, Texas Constitution, requires advance project review only if the project affects a cumulative area larger than five acres or disturbs a cumulative area of more than 5,000 cubic yards, whichever measure is triggered first, or if the project is inside a designated historic district or recorded archeological site.

(e)   There exist categorical exclusions since many activities conducted on nonfederal public land have little, if any, chance to damage archeological sites, and therefore should not require notification under this section.  The following are categorical exclusions at a minimum:

(1)   water injection into existing oil and gas wells;

(2)   upgrading of electrical transmission lines when there will be no new disturbance of the existing easement;

(3)   seismic exploration activity when there is no ground penetration or disturbance;

(4)   building and repairing fences that do not require construction or modification of associated roads, fire breaks, or previously disturbed ground;

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 6 of 18

(5)   road maintenance that does not involve widening or lengthening the road;

(6)   installation or replacement of meter taps;

(7)   controlled burning of fields;

(8)   animal grazing;

(9)   plowing, if the techniques are similar to those used previously;

(10)   installation of monuments and sign posts unless within the boundaries of designated historic districts;

(11)   maintenance of existing trails;

(12)   land sales and trades of land held by the permanent school fund and permanent university fund;

(13)   permanent school fund and permanent university fund leases, easements, and permits, including mineral leases and pooling agreements, in which the lessee, grantee, or permittee is specifically required to comply with the provisions of this chapter;

(14)   oil, gas, or other mineral exploration, production, processing, marketing, refining, or transportation facility or pipeline project in an area where the project will cross state or local public roads, rivers, and streams, unless they contain a recorded archeological site or a designated state land tract in Texas' submerged lands;

(15)   maintenance, operation, replacement, or minor modification of an existing oil, gas, or other mineral exploration, production, processing, marketing, refining, or transportation facility or pipeline;  and

(16)   any project for which a state permit application has been made prior to promulgation of rules under this section.

(f)   This section does not apply to any state agency or political subdivision that has entered into a memorandum of understanding for coordination with the committee.

(g)(1) If, during the course of a project or class of projects that have complied with the notification requirements of this section, a person encounters an archeological site, the person shall abate activity on the project at the project location and shall promptly notify the committee.  Within two business days of notification under this subsection, the committee shall determine whether:

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 7 of 18

(A)  a historically significant archeological site is likely to be present in the project area;

(B)  additional action, if any, is needed to protect the site;  and

(C)  an archeological investigation is necessary.

(2)  If the committee fails to respond within two business days, the person may proceed without further notice to the committee.

(h)  The notification required by this section does not apply to a response to a fire, spill, or other emergency associated with an existing facility located on state or local public lands if the emergency requires an immediate response.

(i)  The committee by rule shall establish procedures to implement this section.

Added by Acts 1995, 74th Leg., ch. 109, Sec. 19, eff. Aug. 30, 1995. Amended by Acts 1997, 75th Leg., ch. 1070, Sec. 51, eff. Sept. 1, 1997.


Sec. 191.053.  CONTRACT FOR DISCOVERY AND SCIENTIFIC INVESTIGATION.  (a)  The committee may contract with other state agencies or political subdivisions and with qualified private institutions, corporations, or individuals for the discovery and scientific investigation of sunken or abandoned ships or wrecks of the sea, or any part of the contents of them, or archeological deposits or treasure imbedded in the earth.

(b)  The contract shall:

(1)  be on a form approved by the attorney general;

(2)  specify the location, nature of the activity, and the time period covered by the contract;  and

(3)  provide for the termination of any right in the investigator or permittee under the contract on the violation of any of the terms of the contract.

(c)  The executed contract shall be recorded by the person, firm, or corporation obtaining the contract in the office of the county clerk in the county or counties in which the operations are to be conducted prior to the commencement of the operation.

(d)  Title to all objects recovered is retained by the State of Texas unless and until it is released by the committee.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 8 of 18

Acts 1977, 65th Leg., p. 2685, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1983, 68th Leg., p. 2006, ch. 364, Sec. 7, eff. Sept. 1, 1983;  Acts 1987, 70th Leg., ch. 948, Sec. 5, eff. Sept. 1, 1987.


Sec. 191.054.  PERMIT FOR SURVEY AND DISCOVERY, EXCAVATION, RESTORATION, DEMOLITION, OR STUDY.  (a)  The committee may issue a permit to other state agencies or political subdivisions or to qualified private institutions, companies, or individuals for the survey and discovery, excavation, demolition, or restoration of, or the conduct of scientific or educational studies at, in, or on landmarks, or for the discovery of eligible landmarks on public land if it is the opinion of the committee that the permit is in the best interest of the State of Texas.

(b)  Restoration shall be defined as any rehabilitation of a landmark excepting normal maintenance or alterations to nonpublic interior spaces.

(c)  The permit shall:

(1)  be on a form approved by the attorney general;

(2)  specify the location, nature of the activity, and the time period covered by the permit;  and

(3)  provide for the termination of any right in the investigator or permittee under the permit on the violation of any of the terms of the permit.

Acts 1977, 65th Leg., p. 2685, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1983, 68th Leg., p. 2006, ch. 364, Sec. 7, eff. Sept. 1, 1983;  Acts 1987, 70th Leg., ch. 948, Sec. 6, eff. Sept. 1, 1987.


Sec. 191.055.  SUPERVISION. All scientific investigations or recovery operations conducted under the contract provisions in Section 191.053 of this code and all operations conducted under permits or contracts set out in Section 191.054 of this code must be carried out:

(1)  under the general supervision of the committee;

(2)  in accordance with reasonable rules adopted by the committee;  and

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 9 of 18

(3)   in such manner that the maximum amount of historic, scientific, archeological, and educational information may be recovered and preserved in addition to the physical recovery of items.

Acts 1977, 65th Leg., p. 2686, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1983, 68th Leg., p. 2002, ch. 364, Sec. 7, eff. Sept. 1, 1983.


Sec. 191.056.  ACCEPTANCE OF GIFTS.  The committee may accept gifts, grants, devises, or bequests of money, securities, or property to be used in the pursuance of its activities and the performance of its duties.

Acts 1977, 65th Leg., p. 2686, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1983, 68th Leg., p. 2006, ch. 364, Sec. 7, eff. Sept. 1, 1983.


Sec. 191.057.   SURVEY, EXCAVATION, OR RESTORATION FOR PRIVATE PARTIES.  The committee may survey, excavate, or restore antiquities for private parties under rules promulgated by the committee.  All real and administrative costs incurred in the survey, excavation, or restoration shall be paid by the private party.

Acts 1977, 65th Leg., p. 2686, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1987, 70th Leg., ch. 948, Sec. 7, eff. Sept. 1, 1987.


Sec. 191.058.  CURATION OF ARTIFACTS.  (a)  As far as is consistent with the public policy of this chapter, the committee, on a majority vote, may arrange or contract with other state agencies or political subdivisions, and qualified private institutions, corporations, or individuals, for public display of artifacts and other items in its custody through permanent exhibits established in the locality or region in which the artifacts were discovered or recovered.  The committee, on a majority vote, may also arrange or contract with these same persons and groups for portable or mobile displays.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 10 of 18

(b)   The committee is the legal custodian of the items described in this chapter and shall adopt appropriate rules, terms, and conditions to assure appropriate security, qualification of personnel, insurance, facilities for preservation, restoration, and display of the items loaned under the contracts.

(c)   Arrangements for curation of artifacts, data, and other materials recovered under Texas Antiquities Committee permits are specified in the body of the permit.  Should a state agency or political subdivision lack the facilities or for any reason be unable to curate or provide responsible storage for such artifacts, data, or other materials, the Texas Antiquities Committee will arrange for curation at a suitable institution.  The Texas Antiquities Committee may by rule assess costs for the curation.

(d)   The committee may contract with a qualified institution for the institution to serve as a repository for artifacts and other items in the custody of the committee.  The Corpus Christi Museum of Science and History is the repository for marine artifacts.  The committee may contract with other qualified institutions to serve as additional repositories for marine artifacts.  The committee may authorize an archeological repository to loan artifacts and other items curated by the repository to a qualified institution for public display.  The Corpus Christi Museum of Science and History:

(1)   does not own the artifacts for which it serves as a repository;  and

(2)   shall make available for loan to a qualified institution for display the marine artifacts for which it serves as a repository.

Acts 1977, 65th Leg., p. 2687, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1983, 68th Leg., p. 2008, ch. 364, Sec. 8, eff. Sept. 1, 1983;  Acts 1987, 70th Leg., ch. 948, Sec. 8, eff. Sept. 1, 1987;  Acts 1997, 75th Leg., ch. 797, Sec. 1, 2, eff. June 17, 1997.


Sec. 191.059.  COMPLAINTS.  (a)  The committee shall keep an information file about each complaint filed with the committee.

(b)  If a written complaint is filed with the committee, the committee, at least as frequently as quarterly and until final

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 11 of 18

disposition of the complaint, shall notify the parties to the complaint of the status of the complaint.

Added by Acts 1983, 68th Leg., p. 2009, ch. 364, Sec. 9, eff. Sept. 1, 1983.


SUBCHAPTER D. STATE ARCHEOLOGICAL LANDMARKS

Sec. 191.091.  SHIPS, WRECKS OF THE SEA, AND TREASURE IMBEDDED IN EARTH.  Sunken or abandoned pre-twentieth century ships and wrecks of the sea, and any part or the contents of them, and all treasure imbedded in the earth, located in, on, or under the surface of land belonging to the State of Texas, including its tidelands, submerged land, and the beds of its rivers and the sea within jurisdiction of the State of Texas, are declared to be state archeological landmarks and are eligible for designation.

Acts 1977, 65th Leg., p. 2687, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1987, 70th Leg., ch. 948, Sec. 9, eff. Sept. 1, 1987.


Sec. 191.092.  OTHER SITES, ARTIFACTS, OR ARTICLES.  (a)  Sites, objects, buildings, artifacts, implements, and locations of historical, archeological, scientific, or educational interest, including those pertaining to prehistoric and historical American Indians or aboriginal campsites, dwellings, and habitation sites, their artifacts and implements of culture, as well as archeological sites of every character that are located in, on, or under the surface of any land belonging to the State of Texas or to any county, city, or political subdivision of the state are state archeological landmarks and are eligible for designation.
    (b)  For the purposes of this section, a structure or a building has historical interest if the structure or building:
        (1)  was the site of an event that has significance in the history of the United States or the State of Texas;
        (2)  was significantly associated with the life of a famous person;
        (3)  was significantly associated with an event that symbolizes an important principle or ideal;

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 12 of 18

    (4) represents a distinctive architectural type and has value as an example of a period, style, or construction technique; or

    (5) is important as part of the heritage of a religious organization, ethnic group, or local society.

  (c) An individual or a private group that desires to nominate a building or site owned by a political subdivision as a state archeological landmark must give notice of the nomination at the individual's or group's own expense in a newspaper of general circulation published in the city, town, or county in which the building or site is located.  If no newspaper of general circulation is published in the city, town, or county, the notice must be published in a newspaper of general circulation published in an adjoining or neighboring county that is circulated in the county of the applicant's residence.  The notice must:

    (1) be printed in 12-point boldface type;

    (2) include the exact location of the building or site; and

    (3) include the name of the group or individual nominating the building or site.

  (d) An original copy of the notice and an affidavit of publication signed by the newspaper's publisher must be submitted to the commission with the application for nomination.

  (e) The commission may not consider for designation as a state archeological landmark a building or site owned by a political subdivision unless the notice and affidavit required by Subsection (d) are attached to the application.

  (f) Before the committee may designate a structure or building as a state archeological landmark, the structure or building must be listed on the National Register of Historic Places.

  (g) The committee shall adopt rules establishing criteria for the designation of a structure or building as a state archeological landmark.

  (h) The committee shall consider any and all fiscal impact on local political subdivisions before any structure or building owned by a local political subdivision may be designated as a state archeological landmark.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 13 of 18

Acts 1977, 65th Leg., p. 2687, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1981, 67th Leg., p. 193, ch. 90, Sec. 1, eff. Aug. 31, 1981;  Acts 1987, 70th Leg., ch. 948, Sec. 10, eff. Sept. 1, 1987;  Acts 1995, 74th Leg., ch. 109, Sec. 20, eff. Aug. 30, 1995.

Sec. 191.093.  PREREQUISITES TO REMOVAL, ALTERING, DAMAGING, DESTROYING, SALVAGING, OR EXCAVATING CERTAIN LANDMARKS.  Landmarks under Section 191.091 or 191.092 of this code are the sole property of the State of Texas and may not be removed, altered, damaged, destroyed, salvaged, or excavated without a contract with or permit from the committee.

Acts 1977, 65th Leg., p. 2687, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1981, 67th Leg., p. 193, ch. 90, Sec. 2, eff. Aug. 31, 1981;  Acts 1987, 70th Leg., ch. 948, Sec. 11, eff. Sept. 1, 1987.

Sec. 191.094.  DESIGNATING A LANDMARK ON PRIVATE LAND.  (a)  Any site located on private land which is determined by majority vote of the committee to be of sufficient archeological, scientific, or historical significance to scientific study, interest, or public representation of the aboriginal or historical past of Texas may be designated a state archeological landmark by the committee.
(b)  No site may be designated on private land without the written consent of the landowner or landowners in recordable form sufficiently describing the site so that it may be located on the ground.
(c)  On designation, the consent of the landowner shall be recorded in the deed records of the county in which the land is located.

Acts 1977, 65th Leg., p. 2687, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.

Sec. 191.095.  PERMIT FOR LANDMARK ON PRIVATE LAND.  All sites or items of archeological, scientific, or historical interest located on private land in the State of Texas in areas designated as landmarks, as provided in Section 191.094 of this code, and landmarks

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 14 of 18

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 15 of 18

under Section 191.092 of this code, may not be taken, altered, damaged, destroyed, salvaged, or excavated without a permit from the committee or in violation of the terms of the permit.

Acts 1977, 65th Leg., p. 2688, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.


Sec. 191.096.  MARKING LANDMARK ON PRIVATE LAND.  Any site on private land which is designated a landmark shall be marked by at least one marker bearing the words "State Archeological Landmark".

Acts 1977, 65th Leg., p. 2688, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1987, 70th Leg., ch. 948, Sec. 12, eff. Sept. 1, 1987.


Sec. 191.097.  REMOVING DESIGNATION AS LANDMARK.  (a)  Any landmark on public or private land may be determined by majority vote of the committee to be of no further historical, archeological, educational, or scientific value, or not of sufficient value to warrant its further classification as a landmark, and on this determination may be removed from the designation as a landmark.

(b)  On removal of the designation on private land which was designated by instrument of record, the committee shall execute and record in the deed records of the county in which the site is located an instrument setting out the determination and releasing the site from the provisions of this chapter.

Acts 1977, 65th Leg., p. 2688, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1987, 70th Leg., ch. 948, Sec. 13, eff. Sept. 1, 1987.


Sec. 191.098.  NOTIFICATION OF ALTERATION OR DEMOLITION OF POSSIBLE LANDMARK.  (a)  A state agency may not alter, renovate, or demolish a building possessed by the state that was constructed at least 50 years before the alteration, renovation, or demolition and that has not been designated a landmark by the committee, without notifying the committee of the proposed alteration, renovation, or demolition not later than the 60th day before the day on which the agency begins the alteration, renovation, or demolition.

(b)   After receipt of the notice the committee may waive the waiting period;  however, if the committee institutes proceedings to determine whether the building is a state archeological landmark under Section 191.092 of this code not later than the 60th day after the day on which the notice is received by the committee, the agency must obtain a permit from the committee before beginning an alteration, renovation, or demolition of the building during the time that the committee's proceedings are pending.

(c)   Should the committee fail to provide a substantive response within 60 days to a request for a review of project plans, application for permit, draft report review, or other business required under the Antiquities Code, the applicant may proceed without further reference to the committee.

Added by Acts 1983, 68th Leg., p. 2009, ch. 364, Sec. 10, eff. Sept. 1, 1983.  Amended by Acts 1987, 70th Leg., ch. 948, Sec. 14, eff. Sept. 1, 1987.


SUBCHAPTER E. PROHIBITIONS

Sec. 191.131.   CONTRACT OR PERMIT REQUIREMENT.   (a)  No person, firm, or corporation may conduct a salvage or recovery operation without first obtaining a contract.

(b)   No person, firm, or corporation may conduct an operation on any landmark without first obtaining a permit and having the permit in his or its possession at the site of the operation, or conduct the operation in violation of the provisions of the permit.

Acts 1977, 65th Leg., p. 2688, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.


Sec. 191.132.   DAMAGE OR DESTRUCTION.   (a)  No person may intentionally and knowingly deface American Indian or aboriginal paintings, hieroglyphics, or other marks or carvings on rock or elsewhere that pertain to early American Indian or aboriginal habitation of the country.

(b)   A person who is not the owner shall not wilfully injure, disfigure, remove, or destroy a historical structure, monument, marker, medallion, or artifact without lawful authority.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 16 of 18

Acts 1977, 65th Leg., p. 2688, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.


     Sec. 191.133.  ENTRY WITHOUT CONSENT.  No person who is not the owner, and does not have the consent of the owner, proprietor, lessee, or person in charge, may enter or attempt to enter on the enclosed land of another and intentionally injure, disfigure, remove, excavate, damage, take, dig into, or destroy any historical structure, monument, marker, medallion, or artifact, or any prehistoric or historic archeological site, American Indian or aboriginal campsite, artifact, burial, ruin, or other archeological remains located in, on, or under any private land within the State of Texas.

Acts 1977, 65th Leg., p. 2688, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.


                    SUBCHAPTER F. ENFORCEMENT

     Sec. 191.171.  CRIMINAL PENALTY.  (a)  A person violating any of the provisions of this chapter is guilty of a misdemeanor, and on conviction shall be punished by a fine of not less than $50 and not more than $1,000, by confinement in jail for not more than 30 days, or by both.
     (b)  Each day of continued violation of any provision of this chapter constitutes a separate offense for which the offender may be punished.

Acts 1977, 65th Leg., p. 2689, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.


     Sec. 191.172.  CIVIL ACTION BY ATTORNEY GENERAL.  (a)  In addition to, and without limiting the other powers of the attorney general, and without altering or waiving any criminal penalty provided in this chapter, the attorney general may bring an action in the name of the State of Texas in any court of competent jurisdiction for restraining orders and injunctive relief to restrain and enjoin

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 17 of 18

violations or threatened violations of this chapter, and for the return of items taken in violation of the provisions of this chapter.

(b)  Venue for an action instituted by the attorney general lies either in Travis County or in the county in which the activity sought to be restrained is alleged to be taking place or from which the items were taken.

Acts 1977, 65th Leg., p. 2689, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.


Sec. 191.173.  CIVIL ACTION BY CITIZEN.  (a)  A citizen of the State of Texas may bring an action in any court of competent jurisdiction for restraining orders and injunctive relief to restrain and enjoin violations or threatened violations of this chapter, and for the return of items taken in violation of the provisions of this chapter.

(b)  Venue of an action by a citizen lies in the county in which the activity sought to be restrained is alleged to be taking place or from which the items were taken.

Acts 1977, 65th Leg., p. 2689, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.


Sec. 191.174.  ASSISTANCE FROM STATE AGENCIES, POLITICAL SUBDIVISIONS, AND LAW ENFORCEMENT OFFICERS.  (a)  The chief administrative officers of all state agencies and political subdivisions are directed to cooperate and assist the committee and the attorney general in carrying out the intent of this chapter.

(b)  All state and local law enforcement agencies and officers are directed to assist in enforcing the provisions and carrying out the intent of this chapter.

Acts 1977, 65th Leg., p. 2689, ch. 871, art. I, Sec. 1, eff. Sept. 1, 1977.  Amended by Acts 1987, 70th Leg., ch. 948, Sec. 15, eff. Sept. 1, 1987.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152038 - Page 18 of 18



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:        64152038 Total Pages:  18

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

CAUSE NUMBER 2015-02771

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION | : | IN THE DISTRICT COURT |
| | : | |
| v. | : | HARRIS COUNTY, TEXAS |
| | : | |
| THE CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD. | : | |
| | : | 80th JUDICIAL DISTRICT |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*JANUARY 26, 2015*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On the 26th day of January, 2015, the following proceedings came on to be heard in the above-entitled and -numbered cause before the Honorable Alexandra Smoots-Hogan, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by Certified Shorthand Reporter and Machine Shorthand/Computer-Aided Transcription.

**EXHIBIT C**

DONNA KING HAMMER, CSR
164TH OFFICIAL REPORTER
(713) 368-6256

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 1 of 24

*A P P E A R A N C E S*

*FOR THE PLAINTIFF:*
        Mr. Benjamin Hall, III, SBN 08743745
        THE HALL LAW FIRM
        530 Lovett Boulevard
        Houston, Texas   77006
        Telephone: 713-942-9600
        Facsimile: 713-942-9566

        Mr. William L. Van Fleet, SBN 20494750
        Attorney at Law
        9225 Katy Freeway, Suite 250
        Houston, Texas   77024
        Telephone: 713-224-9400
        Facsimile: 713-224-0609

*FOR THE DEFENDANT:*
        Ms. Darah Eckert, SBN 24007141
        Mr. Brian Amis, SBN 24040424
        Ms. Lisa A. Ketai, SBN 11362400
        CITY OF HOUSTON LEGAL DEPARTMENT
        900 Bagby Street
        Houston, Texas   77002
        Telephone: 832-393-6348
        Facsimile: 832-393-6259

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 2 of 24

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 3 of 24

*P R O C E E D I N G S*

THE COURT: We are on the record in Cause Number 2015-02771, *Freedmen's Town Preservation Coalition versus City of Houston*, *et al.*, and appearance for the record, Counsel.

MR. HALL: Your Honor, Benjamin Hall and Bill Van Fleet on behalf of Freedmen's Town Preservation Coalition.

MS. ECKERT: Darah Eckert, Lisa Ketai, and Brian Amis on behalf of the City of Houston.

THE COURT: All right. What's going on today? It's your motion to dissolve, so --

MS. ECKERT: Yes, ma'am. Permission to approach, or do you --

THE COURT: Yeah.

MS. ECKERT: -- just want us to handle it from here?

THE COURT: I don't care. Either way. You can handle it from there. That's fine.

MS. ECKERT: Okay. That's fine.

We're here today to discuss a TRO that was entered ex parte on -- last Tuesday. We would've liked to have been there, and since we wouldn't -- since we weren't invited, we're here today to dissolve the TR -- to ask the Court to dissolve the

TRO. We believe the TRO has some deficiencies, one being that it's void on its face because it doesn't state the time that it was entered. The petition has the time the petition was filed, but the TRO -- there's no time on the TRO, and Rule 680 of the Texas Rules of Civil Procedure -- that voids the TRO.

And then the TRO is based on incorrect facts of law and -- statement of facts and law, the first being that the TRO is -- the TRO proposes that the City has -- does not have the requisite permission from the Texas Historical Commission to start and complete the brick renovation project for Freedmen's Town. We understand and agree that it is -- that Freedmen's Town is designated as a historical district. We agree with Plaintiffs on that. But it does not have additional designations, which would heighten the scrutiny for the City's project. This Freedmen's Town is not a -- designated as a State architectural landmark. It's not a -- designated as a traditional cultural property. It doesn't have those specific designations.

I've -- checked today, was on the phone with Linda Henderson with the Texas Historical Commission. I have confirmed that -- that this area is designated as a historical district only, and

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 4 of 24

because it's designated as a historical district only, the City has to provide notice, and it has done that. It has -- the THC has been involved with our project. The public has been involved with our project. Mayor has someone on staff, Keith Wade, who has been dealing with the stakeholders, the coalition -- the members of the coalition about the project.

On December 15, THC visited Houston, from Austin, and they looked at the process that we were using to remove and clean the bricks. Linda Henderson was the representative from THC that came down that day. She made some comments. On December 22nd she gave the approval for the City for the process that we are using to remove the bricks -- clean the bricks before completing the work in Freedmen's Town and then putting them back in.

She said "Okay. Subject to a couple of comments, this is approved and you're good to go," and we have those approvals from THC.

The work that we're doing in Freedmen's Town -- the City is tasked with providing for the health, the safety and welfare of its citizens. We need to go in and clean up the infrastructure. We need to install new water -- sewer lines, sewer

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 5 of 24

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 6 of 24

mains, water mains, fire hydrants.

All of this work needs to be done in this area, so we need to remove the bricks, clean them, store them. We're going to have an architecture -- an archaeologist on-site. They've coordinated the with the Texas Historical Commission. They're going to be on-site every day that we're doing this project. There is -- the bricks -- when the bricks are being worked on and they're being removed, the archaeologists are going to be on-site, and they're going to supervise all of this work.

*THE COURT:* Let me ask you a question --

*MS. ECKERT:* Yes, ma'am.

*THE COURT:* -- because this came up before. Number one, are they going to be marking the bricks so that we know where they go when they're supposed to go back?

*MS. ECKERT:* I don't believe they're going to be mak -- marking the bricks.

*THE COURT:* Uh-huh. All right. Question Number 2: As far as what I saw and -- what I've seen and what's been handed me today that I've had a little bit of time to go over --

*MS. ECKERT:* Sure.

*THE COURT:* What I saw previously was there's supposed to be a formal permit from the Historical Commission before work begins. Correct?

*MS. ECKERT:* No.

*THE COURT:* Oh.

*MS. ECKERT:* That's incorrect.

*THE COURT:* Okay. Enlighten me on this one.

*MS. ECKERT:* We have approval from the Texas Historical Commission. The -- the permit that -- Section 191 of the Texas Natural Resource Code --

*THE COURT:* Uh-huh.

*MS. ECKERT:* That section applies to properties and buildings that are designated as State Archaeological Landmarks. Freedmen's Town does not have that designation.

*THE COURT:* I thought it was part of -- yeah.

*MS. ECKERT:* It's in a historical district. It does not have the SAL designation. And I confirmed that today with Linda from the THC.

*THE COURT:* Okay.

*MS. ECKERT:* So that's a heightened scrutiny. Those properties that have that

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 7 of 24

designation do have a heightened scrutiny for work being done on them. Freedmen's Town does not have that designation. Because it is designated as a historical district, there are notice provisions. There's notice to THC that must be given. There's coordination with THC that must be done.

We have done that. They've been involved in the process. We have -- and I've attached to my motion to withdraw -- there are -- the THC approvals are part of the field notes, and there are -- there's -- for the brick removal, which is Plan Submittal 47(b), and the -- the permission is signed by Linda Henderson, and it notes that the site visit was on December 15th, and then her approval -- the THC's approval is given on December 22nd, and that's for the brick removal and then for the brick cleaning. We have also attached some of the -- the contract documents.

THE COURT: Uh-huh.

MS. ECKERT: The contract documents stipulate that the archaeologists are to be on-site. If they come across any part of the old trolley lanes or anything that needs to stop work, they are going to stop work. The -- the contract says we are going to call THC, we're going to call the Houston Heritage

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 8 of 24

Society. We're going to get these people involved. There's going to be oversight of this project.

THE COURT: I guess I'm a little concerned as to why there was going to be oversight, but then it seems like work just started when there was just a breakdown in communication, from what I understood. Sounded like a breakdown in communication.

MS. ECKERT: There has not been any breakdown in communication. Work was slate -- we got -- we got permission from the THC. Kevin Wade with the mayor's office deals and communicates on a routine basis with the coalition, and we are under a -- we have contractual obligations at this point, and we need to get -- we need to do the renovation work on the infrastructure. We need to get these water and sewer lines -- we need to start getting this work done for the neighborhood.

THE COURT: All right. Let me ask you another question.

MS. ECKERT: Yes, ma'am.

THE COURT: I signed this last week. Your true hearing on the merits is actually scheduled for Friday --

MS. ECKERT: I understand that.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 9 of 24

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 10 of 24

*THE COURT:* -- of this week at 1:30, so we're talking about a four-day differential on this.

*MS. ECKERT:* I understand.

*THE COURT:* It's almost akin to kind of getting a second bite at the apple. I -- notwithstanding the whole time issue, which -- generally in those cases I end up signing an amended TRO with the time on it that does exactly the same thing. So I'm -- I'm -- I find it curious that we're back here making arguments that, ostensibly, you'll make again on Friday at 1:30. I'm trying to figure out where the -- the harm is here in waiting until -- and I'm not your home court. This might be a really, really intelligent discussion if I were the 80th District Court --

*MS. ECKERT:* Sure.

*THE COURT:* -- where your case is actually pending.

*MS. ECKERT:* Sure.

*THE COURT:* But I'm just ancillary, so --

*MS. ECKERT:* I understand.

*THE COURT:* -- I'm a little confused as to why we're back here with -- when you've got four more days.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 11 of 24

*MS. ECKERT:* Okay. It's a great question. Because what's out there right now in the public and in front of the public eye is that we're acting in violation of the law, and we're not. And so we're simply -- we -- we have all the requisite permissions and felt -- we feel very strongly that we needed to get that out there, that we're not -- we're not acting in violation -- we're not violating the Texas --

*THE COURT:* Right. I'm not in the business of PR games and media games. I'm really not. I'm in the business of --

*MS. ECKERT:* I understand.

*THE COURT:* -- of how all this law stuff works. Technically, all of these arguments -- right, wrong or indifferent, technically, should go to your home court instead of with me. I'm not hearing --

*MS. ECKERT:* Well --

*THE COURT:* Outside of the time -- I -- I, maybe, grant you that.

*MS. ECKERT:* Okay. So now we're going to walk in on Friday, and I'm sure Mr. Hall is going to say, "Well, we already have a TRO against the City, Judge. You know, here -- our arguments are so

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 12 of 24

strong that ancillary court already granted a TRO."

And our -- our position is it shouldn't have been granted because it's not factually or legally sound. It's not based on correct facts and the correct interpretation of the law. We have the requisite THC approval to move forward on this project, and if you read the Plaintiff's Original Petition, it says we don't, and we do.

*THE COURT:* Okay. I'm still not hearing any reason why we couldn't have dealt with this in your home court on Friday, in four days, like we already discussed, but okay.

Response.

*MR. HALL:* Thank you, Your Honor. And, Judge, we filed a verified petition, and the Court granted it just moments after the City of Houston had already started taking up the bricks. My worthy opponent -- opposing counsel is simply wrong on the law. The City of Houston has made a number of fundamental blunders -- legal blunders that are clearly set forth in the law.

Let me start initially with my -- with the City's argument they didn't need a permit. That's simply wrong, and in fact, we included in the binder for the Court several pieces of law that

answer that question. First, Exhibit 1 clearly recognizes the entire Freedmen's Town as a historic -- historically designated site by -- and it is on the National Register of Historic Places. That's no longer in contest.

Exhibit 2 shows that landmarks -- and that's a key term, Your Honor, "landmarks." -- are the sole property of the State of Texas and may not be removed, altered, damaged, destroyed, salvaged, or excavated without a contract with or permit from the committee. The City has neither a contract from nor a permit from the committee.

So what is the committee? If you turn to the next page under that same tab, the committee is defined. It's the Texas Historical Commission. So now we know they need a contract with or a permit from the THC. But then there's also the definition of "landmark." "Landmark" means a State Archaeological Landmark.

So what's the definition of a State Arc -- Archaeological Landmark? Under Tab 3, we brought that for you because that defines what is a State Archaeological Landmark.

The City's lawyer just simply is wrong on the law when she says this is not designated as a

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 13 of 24

State Archaeological Landmark, and quite honestly, she attributes that to a telephone call with Linda Henderson. Linda Henderson is not the THC.

We actually brought the identity of all of the commissioners of the THC, none of which is Linda Henderson. And it's kind of frightening to believe that the City's lawyers would rely upon that telephone call with a non-commissioner and no official action of the commission, but they did.

The City is going to find out on Friday, we believe, that they have an even more fundamental problem, and that is that the very bid they let is invalid and void. The entire project has to stop because they didn't follow the law.

But here, the definition of a State Archaeological Landmark, under -- 191.092(a) says "sites, objects, buildings, artifacts, implements, and locations of historical, archaeological, scientific, or educational interests," and then I'm going to skip down to where it says "as well as archaeological sites of every character that are located in, on, and under the surface of any land belonging to the state of Texas or to any county, city, or political subdivision of the state or State archaeological landmarks and are eligible for

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 14 of 24

designation." That is as expansive a definition of "State Archaeological Landmark" as you can have. Again, the City is simply wrong by relying upon a telephone call as opposed to referring to the law.

Next, Tab 4. Here, under Section 191.131 -- again, in a separate part of the law, the State Legislature says "No person" -- and I'm at "b," Your Honor. -- "No person, firm, or corporation may conduct an operation on any landmark without first obtaining a permit and having the permit in his or its possession at the -- at the site of the operation or conduct the operation in violation of the provisions of the permit."

The City's lawyer just admitted they don't have a permit. They got a telephone call. They got an inspection. The project cannot go forward. The law says it cannot even proceed.

Then, Your Honor -- and I'm sorry to tire the Court, because if -- when I made the representation to the Court in my petition -- and now that's being challenged. At least I'd like to quiet any anxiety the Court has about my representation that they -- that they did not have a permit. Luckily, the City's lawyer admits they don't have it.

Then, Your Honor, the question is:

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 15 of 24

Well, what does a permit have to include?  So we have provided the Court with Section one -- which is under Tab 5 -- 191.054, a permit for survey and discovery, excavation, restoration, demolition, or study.

Subpart "b" says, "Restoration shall be defined as any rehabilitation of a landmark, excepting normal maintenance or alterations to non-public interior spaces."  And this is what the permit shall include, this is mandatory:  The permit shall be on the form approved by the attorney general.  It shall specify the location, nature of the activity and the time period covered by the permit, and it shall provide for the termination of any right in the investigator or permittee under the permit.  Those are mandated by law.

The City of Houston has none of that.  It's a legal blunder that -- they should never have engaged this project without having that permit.

Next, Your Honor -- so what's the consequence if they fail to have the permit?  Under Tab 6, the failure to seek a permit, "Public owners," which the City is, "project sponsors, project architects, and professional ... shall not perform work on a historic building or structure that is designated as a landmark."  We've already dealt with

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 16 of 24

the definition of "landmark." So the City was not even supposed to proceed with any work, let alone our having to rush over here to get a TRO to stop them from doing their unlawful conduct.

Next. To make sure that the Court and the City knows what has to be in the permit, Tab 7, a separate part of the law, again reiterates the permit shall include -- Subsection (b) -- the terms and condition, the period -- the permit period, and the permit expiration as well as whether it's transferable. That's what the law says the permit has to include. That's why the City attorney jumps up today and tells you, "Oh, Judge, we didn't have to have a permit," because she knows the City doesn't have one, and, therefore, they cannot do the work.

Then next is Tab 8. Tab 8 specifically identifies the types of permits the THC can give, preservation permit, rehabilitation, restoration, reconstruction, architectural, investigation permit. They have none. So, Judge, I then included the actual forms that show, under Tab 9, what the permit looks like, from an application, permit completion, as well as the law that sets forth those guidelines.

Now, the -- the actual smoking gun is Tab 10. We called Linda Henderson. We asked Linda

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 17 of 24

Henderson, on an open records request, "Give us the City's permits." She wrote us back this e-mail -- and this will be in evidence on Friday. "I created that site form specifically for this project, hoping that it would help thing -- things clear, but it is the only time I've used it." "It is the only time I've used it, and I created it."

Judge, the statute says the -- the attorney general has to approve the permit form, not Ms. Linda Henderson, and that's all the City has.

Next, the City, in its response -- before they found out that somebody needed to read the law, they said, "This is our authorization," under Tab 11, but, Judge, you can see that this is a site visit form, not a permit. Up at the top -- this is the document Linda Henderson created. It does not specify the time period covered, the permittee, the time of expiration, the non-transferability of the permit. All of those requirements that the law says has to be in the permit are not here.

Linda Henderson may have been somebody, individually, who wanted to create something, but she didn't comply with the law, and in the City's response they actually said they relied upon this to show compliance with THC guidelines. Well, you just

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 18 of 24

don't get to do it that way. You have to comply with the law. And, Your Honor, as you know, it pains me, as a former City attorney, to have to challenge the fact that the City's lawyers failed to do their job here. They just did.

Under Tab 12 -- so the Court then says, "Well, Mr. Hall, can you show me a permit issued by the THC?" Yes, ma'am, we can. Your Honor, under Tab 12 is an actual permit, Permit Number 494, issued by THC -- the Tarrant County Courthouse; under Tab 13, another permit issued by the THC for rehabilitation in Jefferson County Courthouse, and this permit -- both of these comply with the law. We have the name of the project, the term of the permit, when it expires, the lack of transferability as well as the permittee identified on the permit.

And finally, Your Honor, I brought you another permit, Tab 14. Again, that complies with the law. It indicates who owns and controls the same, where it's to be performed, sponsored by the principal investigator, when the permit takes effect, when it's going to expire, precisely what the statute says the permit must contain.

So then, finally, we get to your TRO, and the City crafts an argument that says, "Judge, it

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 19 of 24

doesn't have a time." And I think that the Court should put 10:00 o'clock. I think you signed the order at 10:00 o'clock. But it does include a time. It says, in the last paragraph -- and I highlighted it. -- "This temporary restraining order is effective immediately upon signing by the Court and shall continue in force," et cetera.

So the Court indicates that it's effective immediately upon signing. But if they want a time, which I think -- so the City appears to want to have a time here. If the Court were to, on this same order, just simply say "at" -- where it says "Done this 20th day of January, 2015" -- "at 10:00 o'clock" -- I believe the Court was signing the order at 10:00 o'clock because we delivered it immediately over to the site at 11:00 o'clock. That's when it was served on the other side.

That, Your Honor, addresses the issues in terms of the law. They don't have a permit. Quite honestly, on Friday we're going to prove what the consequence of that is, and it's a $5 million hit to the City because the City of Houston did this project wrong. There -- the Court is right. Four days will transpire. There's no harm to anyone. The TRO should not be dissolved.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 20 of 24

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 21 of 24

*MS. ECKERT:* Brief response, Your Honor?

*THE COURT:* Sure.

*MS. ECKERT:* Okay. So Mr. Hall has read a bunch of Section 191 and a bunch of it that doesn't apply to this project because what he hasn't said is that Freedmen's Town has been designated as a State Archaeological Landmark, and he hasn't said that because it hasn't, which means that Section 191.052(5), "Notice Required" -- that is the section of 191 that applies to this project. "Before breaking ground at a project location on State or local public land, person primarily responsible for the project or the person's agent shall notify the committee," the committee being THC, and we did that.

With regard to the approvals -- we have -- you can call it permission, you can call it a permit, but we do have THC's permission to go forward with this project. The documents that we have submitted to the Court say "Project may proceed based on protocols and specifications." And that was for the brick cleaning. For the brick removal, "Project may proceed based on protocols, specifications, and conditions." Linda Henderson made some comments, gave us some additional things to follow. This is

permission to go forward with these projects, and we do have the requisite permission.

And for the rest of 191 that Mr. Hall has talked about -- that doesn't apply because this site is only designated as -- as a historical district. It's not -- there's no designation as a State Archaeological Landmark, and that is a very important distinction to make.

THE COURT: All right. Like I said, I read this stuff before I came out here. Frankly, Counsel, I just disagree with you. I think that the -- Code Sections 9 -- 191, the initial sections, make it pretty clear that it's kind of a broad brush that we paint to look at landmarks, and in fact, a portion that Mr. Hall didn't read but I did, which says they have to be eligible for designation as well, clearly -- and then defines what it means to be eligible for designation and very clearly says is an important part of heritage. You know, does it have some distinct archaeological value? Clearly, the fact that it's already been designated before shows that it would probably come under this purview.

Regardless, my burden is very low, as we're still at TRO stage, which is why I cautioned you as to why you wouldn't wait to make this litany

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 22 of 24

of arguments in front of the TV cameras on Friday in Judge Weiman's court instead of coming here, because, frankly, I think they passed the bar when I signed it last Tuesday. They passed the very minimal bar to get me to still be okay with it today, which gets you to Friday in your home court, Judge Weiman, at 1:30. The only thing that I may be willing to do, just for the sake of completion, is sign an amended TRO that -- where I would change absolutely no language on here and only give you a time in addition to the date, and that's about all I'm willing to do. So --

*MS. ECKERT:* Okay.

*MR. HALL:* Thank you, Your Honor.

*THE COURT:* With that, we're adjourned.

*MR. HALL:* Thank you, Your Honor.

*THE COURT:* Thanks.

*MR. HALL:* With your permission -- is that the copy of the order?

*THE COURT:* Yeah. If you have one, hand it up. I'll sign it right now.

*(Court adjourned.)*

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 23 of 24

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152039 - Page 24 of 24

THE STATE OF TEXAS    )
                      )
COUNTY OF HARRIS      )


        I, Donna King Hammer, Official Court Reporter in and for the 164th Judicial District Court of Harris County, Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.


        I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.


        I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid/will be paid by _____.


        WITNESS MY OFFICIAL HAND this, the 3rd day of February, 2015.


                        *Donna King Hammer*
                        _____
                        DONNA KING HAMMER, CSR 6273
                        Expiration Date: 12/31/16
                        Official Court Reporter
                        164th Judicial District Court
                        Harris County, Texas
                        201 Caroline, 12th Floor
                        Houston, Texas  77002
                        (713) 368-6256



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:        64152039 Total Pages:  24

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152040 - Page 1 of 2

*State of Texas*

# TEXAS ANTIQUITIES COMMITTEE

*ARCHEOLOGY PERMIT # 6595*

This permit is issued by the Texas Historical Commission, hereafter referred to as the Commission, represented herein by and through its duly authorized and empowered representatives. The Commission, under authority of the Texas Natural Resources Code, Title 9, Chapter 191, and subject to the conditions hereinafter set forth, grants this permit for:

Intensive Survey

To be performed on a potential or designated landmark or other public land known as:

Title: Cape Road Parking (City of San Marcos ROW Only)

County: Hays

Location: Approximately 15 to 20 parking spaces situated adjacent to Cape Road approximately 30.5 to 40.0 meters (m) (100.0 to 131.2 feet) to the east of the San Marcos River in San Marcos, Hays County, Texas.

Owned or Controlled by: (hereafter known as the Permittee):

City of San Marcos

630 East Hopkins
San Marcos, TX 78666

Sponsored by (hereafter known as the Sponsor):

David Mulkey, Jr.

1550 Timothy Road, Suite 201
Athens, GA 30606

The Principal Investigator/Investigation Firm representing the Owner or Sponsor is:

Jennifer Cochran

Horizon Environmental Services, Inc.

1507 South IH 35

Austin, TX 78741

This permit is to be in effect for a period of:

5 Years and 0 Months

and Will Expire on:

07/18/2018

During the preservation, analysis, and preparation of a final report or until further notice by the Commission, artifacts, field notes, and other data gathered during the investigation will be kept temporarily at:

Horizon Environmental Services, Inc.

Upon completion of the final permit report, the same artifacts, field notes, and other data will be placed in a permanent curatorial repository at:

Texas Archeological Research Lab.

Scope of Work under this permit shall consist of:

Conduct intensive cultural resource survey of approximately 15-20 parking spaces located within the City of San Marcos Public ROW adjacent to Cape Road also to the east of the San Marcos River in San Marcos, Hays County, Texas. For details, see scope of work submitted with permit application.

**EXHIBIT D**



EXHIBIT

14

## This permit is granted on the following terms and conditions:

1) This project must be carried out in such a manner that the maximum amount of historic, scientific, archeological, and educational information will be recovered and preserved and must include the scientific, techniques for recovery, recording, preservation and analysis commonly used in archeological investigations. All survey level investigations must follow the state survey standards and the THC survey requirements established with the projects sponsor(s).

2) The Principal Investigator/Investigation Firm, serving for the Owner/Permittee and/or the Project Sponsor, is responsible for insuring that specimens, samples, artifacts, materials and records that are collected as a result of this permit are appropriately cleaned, and cataloged for curation. These tasks will be accomplished at no charge to the Commission, and all specimens, artifacts, materials, samples, and original field notes, maps, drawings, and photographs resulting from the investigations remain the property of the State of Texas, or its political subdivision, and must be curated at a certified repository. Verification of curation by the repository is also required, and duplicate copies of any requested records shall be furnished to the Commission before any permit will be considered complete.

3) The Principal Investigator/Investigation Firm serving for the Owner/Permittee, and/or the Project Sponsor is responsible for the publication of results of the investigations in a thorough technical report containing relevant descriptions, maps, documents, drawings, and photographs. A draft copy of the report must be submitted to the Commission for review and approval. Any changes to the draft report requested by the Commission must be made or addressed in the report, or under separate written response to the Commission. Once a draft has been approved by the Commission, one (1) printed, unbound copy of the final report containing at least one map with the plotted location of any and all sites recorded and two copies of the report in tagged PDF format on an archival quality CD or DVD shall be furnished to the commission. One copy must include the plotted location of any and all sites recorded and the other should not include the site location data. A paper copy and an electronic copy of the completed Abstracts in Texas Contract Archeology Summary Form must also be submitted with the final report to the Commission. (Printed copies of forms are available from the Commission or also online at www.thc.state.tx.us.)

4) If the Owner/Permittee, Project Sponsor or Principal Investigator/Investigation Firm fails to comply with any of the Commission's Rules of Practice and Procedure or with any of the specific terms of this permit, or fails to properly conduct or complete this project within the allotted time, the permit will fall into default status. A notification of Default status shall be sent to the Principal Investigator/Investigation Firm, and the Principal Investigator will not be eligible to be issued any new permits until such time that the conditions of this permit are complete or, if applicable, extended.

5) The Owner/Permittee, Project Sponsor, and Principal Investigator/Investigation Firm, in the conduct of the activities hereby authorizes, must comply with all laws, ordinances and regulations of the State of Texas and of its political subdivisions including, but not limited to, the Antiquities Code of Texas; they must conduct the investigation in such a manner as to afford protection to the rights of any and all lessees or easement holders or other persons having an interest in the property and they must return the property to its original condition insofar as possible, to leave it in a state which will not create hazard to life nor contribute to the deterioration of the site or adjacent lands by natural forces.

6) Any duly authorized and empowered representative of the Commission may, at any time, visit the site to inspect the fieldwork as well as the field records, materials, and specimens being recovered.

7) For reasons of site security associated with historical resources, the Project Sponsor (if not the Owner/Permittee), Principal Investigator, Owner, and Investigation Firm shall not issue any press releases, or divulge to the news media, either directly or indirectly, information regarding the specific location of, or other information that might endanger those resources, or their associated artifacts without first consulting with the Commission, and the State agency or political subdivision of the State that owns or controls the land where the resource has been discovered.

8) This permit may not be assigned by the Principal Investigator/Investigation Firm, Owner/Permittee, or Project Sponsor in whole, or in part to any other individual, organization, or corporation not specifically mentioned in this permit without the written consent of the Commission.

9) Hold Harmless: The Owner/Permittee hereby expressly releases the State and agrees that Owner/Permittee will hold harmless, indemnify, and defend (including reasonable attorney's fees and cost of litigation) the State, its officers, agents, and employees in their official and/or individual capacities from every liability, loss, or claim for damages to persons or property, direct or indirect of whatsoever nature arising out of, or in any way connected with, any of the activities covered under this permit. The provisions of this paragraph are solely for the benefit of the State and the Texas Historical Commission and are not intended to create or grant any rights, contractual or otherwise, to any other person or entity.

10) Addendum: The Owner/Permittee, Project Sponsor and Principal Investigator/Investigation Firm must abide by any addenda hereto attached.

Upon a finding that it is in the best interest of the State, this permit is issued on 07/18/2013.

*Pat Mercado-Allinger*

Pat Mercado-Allinger, for the
Texas Historical Commission

For Official Governmental Use Only - Do Not Disseminate to the Public: 64152040 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:       64152040 Total Pages:  2

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

2/6/2015 6:19:51 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 4063468
By: CASARES, ALEXANDRO
Filed: 2/6/2015 6:19:51 PM

CAUSE NO. 2015-02771

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION, PLAINTIFF, | § § § | IN THE DISTRICT COURT |
| v. | § § | HARRIS COUNTY, TEXAS |
| THE CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD, DEFENDANTS. | § § § § | 80TH JUDICIAL DISTRICT |

## ORDER

Came for hearing Defendant the City of Houston's Motion to Deny Plaintiff's Request for Injunctive Relief as a Matter of Law. After considering the Motion, the Response, if any, the argument of counsel, and the paper in the Court's file, the Court hereby FINDS that

As a matter of law, Plaintiff cannot meet its burden to prove a probability of success on the merits. The Court therefore

DENIES Plaintiff's request for a temporary injunction.

Signed this _____ day of _____, 2015

_____
Judge Presiding

For Official Governmental Use Only - Do Not Disseminate to the Public: 45204 - Page 1 of 1

1



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:        64152041 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

APPENDIX 5

CAUSE NO. 2015-02771

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION, PLAINTIFF, | § § § | IN THE DISTRICT COURT |
| V. | § § § | HARRIS COUNTY, TEXAS |
| THE CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD, DEFENDANTS. | § § § § | 80TH JUDICIAL DISTRICT |

## CITY OF HOUSTON'S PLEA TO THE JURISDICTION

Defendant the City of Houston ("the City") files this Plea to the Jurisdiction because the Plaintiffs have failed to establish a basis for waiver of the City's governmental immunity and therefore this Court does not have jurisdiction to proceed.

**I.     The City is immune from suit unless its governmental immunity is waived.**

Sovereign or governmental immunity deprives a trial court of subject matter jurisdiction for lawsuits in which a governmental unit has been sued unless the state consents to suit. *See Texas Dep't of Wildlife v. Miranda*, 133 S.W.3d 217, 225-27 (Tex. 2004). Sovereign immunity is properly asserted in a plea to the jurisdiction. *Id.* at 225.

The trial court must determine whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed. *Id.* Absent a clear and unambiguous legislative waiver, governmental immunity protects municipalities from suit and liability in the performance of their governmental

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209313 - Page 1 of 11

functions. *Tooke v. City of Mexia*, 197 S.W.3d 325, 343-44 (Tex. 2006); *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007).

A plaintiff has the burden to affirmatively plead waiver of governmental immunity and failure to do so deprives the trial court of subject-matter jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 586-87 (Tex. 2001). A plaintiff does not meet this burden simply by referring to a statute which contains a limited waiver of immunity from suit. *Miller*, 51 S.W.3d at 587. Rather, a plaintiff must allege facts that fit within the limited waiver of immunity provided by a statute. *Id.* Whether the plaintiff has met this burden is a question of law. *Miranda*, 133 S.W.3d at 226-27.

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, the court must consider relevant evidence submitted by the parties. *See id.* at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. Under this standard, the court credits evidence favoring the nonmovant and draws all reasonable inferences in the nonmovant's favor. *See id.* The defendant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id.* If the defendant discharges this burden, the plaintiff must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *Id.*

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209313 - Page 2 of 11

**II.    The pleadings and jurisdictional facts conclusively prove that the Court lacks subject matter jurisdiction.**

> **A.    Section 191.173(a) of the Natural Resources Code provides a limited waiver of governmental immunity.**

In its First Amended Original Petition and Application for Injunctive Relief ("Amended Petition"), filed on February 6, 2015, the Plaintiff alleges that the City violated Section 191.093 of the Natural Resources Code by failing to obtain a contract or permit from the Texas Historical Commission permitting "tampering, removal or destruction" of the bricks in Freedman's Town, which they allege to be a "state archeological landmark." (Amended Petition, ¶ 17). Although the City has demonstrated it possesses an archeological permit from the Texas Antiquities Committee ("TAC") for the project,[1] the Plaintiff alleges that "a mere archeological permit" is insufficient to remove, rehabilitate or repair "a state archeological landmark." *Id.*

The Plaintiff bases this suit, and the Court's jurisdiction on section 191.173(a) of the Natural Resources Code ("Code" or "Antiquities Code"), which states as follows:

> A citizen of the State of Texas may bring an action in any court of competent jurisdiction for restraining orders and injunctive relief to restrain and enjoin ***violations or threatened violations of this chapter***, and for the return of items taken in violation of the provisions of this chapter.

Tex. Nat. Res. Code § 191.173 (emphasis added).

---

[1] *See* Exhibit A, Affidavit of Mark Wolfe.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209313 - Page 3 of 11

By this section of the Code, the legislature waived the state's immunity from suit only in the limited circumstances defined, i.e., when there is a violation or a threatened violation of the Code.

However, "mere reference to [a statute] does not establish the state's consent to be sued and thus is not enough to confer jurisdiction on the trial court." *Miller*, 51 S.W.3d at 587. The trial court must consider the particular facts of the case to determine if the case comes within the scope of the limited waiver of governmental immunity. *Id*.

### B. The facts do not establish *a violation or threatened violation* of the Code.

The pleadings and jurisdictional facts here do not demonstrate that the City has violated or threatened to violate the Texas Natural Resources Code. Therefore the facts alleged do not fall within the limited waiver of governmental immunity granted under Section 191.173. Because the facts do not demonstrate "violations or threatened violations" of the Code, the Plaintiffs cannot demonstrate waiver of the City's immunity.

The Code provides for tiered layers of protection for historical buildings and sites. Freedmen's Town is designated as a Historic District in the National Register of Historic Places. As a historic district, Freedmen's Town is subject to Subsection C of the Code. Pursuant to Subsection C, if a "project is inside a designated historic district," the "person primarily responsible for the project" must notify the THC. Tex. Nat. Res. Code §§ 191.0525(a), (d). The THC then has the option to investigate and

4

determine if further action is warranted. *Id.* § 191.0525(a). There is no "permit or contract" requirement as Plaintiff has alleged; the only requirement is "notice" to the THC. There is no dispute that the City provided notice to the THC in advance of the Freedmen's Town Project.

Plaintiff, however, seeks relief under subchapter D of the Code, which affords higher levels of protection to "State Archeological Landmarks." (Pl. Orig. Pet. at p. 2). The THC is empowered by Subchapter D to designate "objects, buildings, artifacts, implements, and locations of historical, archeological, scientific, or educational interest" as "State Archeological Landmarks." Tex. Nat. Res. Code § 191.092(a). Designated State Archeological Landmarks "may not be removed, altered, damaged, destroyed, salvaged or excavated without a contract or permit from the [THC]." *Id.* § 191.093.

In its Motion to Deny Plaintiff's Request for Injunctive Relief, the City submitted the affidavit of Mark Wolfe, Executive Director of the THC. (*See* Ex. A). Mr. Wolfe testified that he thoroughly searched the records of the THC and determined "that the Freedman's Town in Houston is designated as a Historical District. However, it is not designated as a State Archeological Landmark nor is there a pending application to designate Freedmen's Town in Houston as a State Archeological Landmark." (Ex. A at ¶ 9). He further testified that on September 12, 2014, the City obtained Archeology Permit #7021. "Archeology Permit #7021 is granted for monitoring to be performed on a potential or designated landmark or other public land known as Freedmen's Town Brick Streets, City of Houston, located

5

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209313 - Page 5 of 11

in Harris County at the Intersection of Wilson and Andrews Streets, 2 blocks south of West Dallas Street and 7 blocks west of Heiner Street." (Ex. A at ¶ 3). Mr. Wolfe confirmed that "Archeology Permit #7021 is the only permit needed for work to proceed on the Freedmen's Town Brick Streets Project." (Ex. A at ¶ 7).

Because Freedman's Town is not designated as a State Archeological Landmark, it does not fall under the permit or contract requirements of Section 191.093. There have been no "violations or threatened violations" of the Code to establish a basis for this Court's jurisdiction under the limited waiver of immunity in the Code.

The City has submitted Mr. Wolfe's affidavit and Archeology Permit #7021. This evidence meets the City's burden to challenge the alleged a waiver of governmental immunity. It is the Plaintiff's burden to present evidence sufficient to raise a material issue of fact regarding jurisdiction. *Miranda*, 133 S.W.3d at 228.

## C.    The Plaintiff misinterprets Section 191.092(a).

The Plaintiff's assertion that the City has violated the Code by failing to obtain a permit or contract is based on its misinterpretation of Section 191.092(a). Plaintiff claims the definition of "state archeological landmark" under Section 191.092(a) of the Code encompasses Freedman's Town. Section 191.092(a) provides that:

> Sites, objects, buildings, artifacts, implements, and locations of historical, archeological, scientific, or educational interest … are state archeological landmarks and are eligible for designation.

6

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209313 - Page 6 of 11

Tex. Nat. Res. Code § 191.092(a). The Plaintiff interprets Section 191.092(a) to mean that unspecified "sites, objects, buildings, artifacts, implements, and locations" are, simply by their inherent nature, State Archeological Landmarks and subject to heightened protections under Subchapter D. The Plaintiff ignores the last phrase of the statute, which states that these sites, objects, buildings etc. "are eligible for designation."

The Plaintiff's interpretation of section 191.092(a) is incorrect. Under the Plaintiff's interpretation, a site can be considered a State Archeological Landmark without the THC ever formally making that designation under Section 191.092(c). Not only does this ignore the plain language of the statute that the areas are "eligible for designation," but it also renders the statute so vague it could not be enforced. Under Plaintiff's interpretation, it would be impossible to know whether a permit or approved contract under Section 191.093 is required to proceed with work on a site because there would be not necessarily be a formal designation of a site as a State Archeological Landmark. In determining the meaning of a statute, a court must consider the entire act, its nature and object, and the consequences that would follow from each construction. *See, e.g.*, *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991). Interpretations of statutes which would produce absurd results are to be avoided. *Id*.

In *Texas Antiquities Committee v. Dallas County Community College District*, the Texas Supreme Court considered the meaning of the prior version of the statute. 554 S.W.2d 924 (Tex. 1977). There, the Dallas Community College District filed suit for

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209313 - Page 7 of 11

an injunction against the Texas Antiquities Committee[2] to set aside the Committee's order denying a permit to demolish three buildings owned by the College District. As here, the location was listed on a National Register, but was not designated as a State Archeological Landmark under the Code. At the time, the relevant portion of the Code was substantively the same as the current version:

> All other sites, objects, buildings, artifacts, implements, and locations of historical, archeological, scientific, or educational interest … are hereby declared to be State Archeological Landmarks and are the sole property of the State of Texas.

Vernon's Ann. Tex. Civ. St. Art. 6145-9 (repealed). The Texas Supreme Court described the Committee's authority under the Code as follows:

> The Antiquities Code does not give the Antiquities Committee authority over buildings in the National Register; instead, the Code only gives the Committee authority over buildings which the Committee has designated as a State Archeological Landmark. ***Since the Committee has not designated the buildings as State Archeological Landmarks, the College District does not need the Committee's permission before demolishing the buildings.***

*Id*. at 926 (emphasis added).

Similarly, in *Board of Regents v. Walker County Historical Commission*, the Fourteenth Court of Appeals reviewed a temporary injunction preventing restoration work on Sam Houston's Woodward home until a permit was issued by the THC. 608 S.W.2d 252 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ). The Board of Regents argued that the Woodward home was not designated as a State Archeological Landmark, and therefore the THC was not authorized or required to

---

[2] In 1995, the 74th Legislature abolished the Texas Antiquities Committee and made the Texas Historical Commission the legal custodian of the Antiquities Code.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209313 - Page 8 of 11

issue such a permit. *Id.* at 253. Citing to *Texas Antiquities Committee*, the appellate court agreed and dissolved the temporary injunction. *Id*. These cases confirm that a site must be officially designated as a State Archeological Landmark by the THC under Section 191.092 before it falls under the permit or contract requirements of Section 191.093. This case law is consistent with Mr. Wolfe's testimony that the City was not required to obtain a permit or contract to perform work on the streets.

The Texas Attorney General's Office has also interpreted the statute:

> [T]he Antiquities Committee has no jurisdiction over buildings which it has not designated as state archeological landmarks, and its permission is therefore not needed before such a building is altered … it is the only reasonable construction of the Antiquities Code provisions. One can hardly be expected to know that a particular item is a 'landmark,' and is therefore subject to the permit requirement, until the Antiquities Committee formally designates it as such.

Op. Tex. Att'y Gen. No. MW-378 (1981). Freedman's Town has not been designated as a State Archeological Landmark and does not fall under Subchapter D of the Natural Resources Code. (Ex. A at ¶ 9). Therefore the City was not required to get a permit from the THC prior to commencing work and did not violate Section 191.093 of the Code.

### D.	Because no permit is required for the work on Freedman's Town, Section 191.131(b) does not apply.

Plaintiff also asserts a violation of Section 191.131(b) of the Code. This section states that:

> No person, firm, or corporation may conduct an operation on any landmark without first obtaining a permit and having the permit in his

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209313 - Page 9 of 11

or its possession at the site of the operation, or conduct the operation in violation of the provisions of the permit.

Tex. Nat. Res. Code § 191.131(b).

Because the evidence establishes conclusively that no permit was required under the Code for the work on Freedman's Town, Plaintiff's allegations under Section 191.131(b) also fail to establish a basis for jurisdiction.

### E.    Conclusion

The jurisdictional facts establish that the Plaintiff's allegations do not fall under the limited waiver of immunity from suit in Section 191.173 of the Code. Therefore there is no waiver of the City's immunity from suit, this Court does not have jurisdiction over the Plaintiff's claims, and the Court should grant the City's Plea to the Jurisdiction and dismiss this case in its entirety.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209313 - Page 10 of 11

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209313 - Page 11 of 11

Respectfully submitted,

DONNA L. EDMUNDSON
City Attorney
JUDITH L. RAMSEY
Chief, General Litigation Section

/s/ *Darah Eckert*

Darah Eckert
Senior Assistant City Attorney
SBN 24007141
Lisa A. Ketai
Senior Assistant City Attorney
SBN 11362400
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street
Houston, Texas 77002
832.393.6348 (telephone)
832.393.6259 (facsimile)
darah.eckert@houstontx.gov

*Attorneys for Defendant The City of Houston*

## Certificate of Service

I hereby certify that on this 11th day of February, 2015, a true and correct copy of the foregoing has been served on counsel below via e-service.

Benjamin L. Hall, III
The Hall Law Firm
530 Lovett Boulevard
Houston, Texas 77006
bhall@bhalllawfirm.com

/s/ *Darah Eckert*

Darah Eckert

11



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:        64209313 Total Pages:  11

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

| COUNTY OF TRAVIS | § | |
|---|---|---|
| | § | A F F I D A V I T |
| STATE OF T E X A S | § | |
| | § | |

Before me, the undersigned official, on this day appeared Mark Wolfe who, being duly sworn by me deposed and stated under oath as follows:

1. My name is Mark Wolfe. I am over twenty-one years of age, am of sound mind, have never been convicted of a crime, and am otherwise competent to testify. I am the Executive Director of the Texas Historical Commission. I am the custodian of documents for the Commission and have personal knowledge of the information below;

2. Attached as Exhibit "A" is the State of Texas, Texas Antiquities Committee ("TAC") Archeology Permit #7021. The permit was issued on September 12, 2014 and signed by Pat Mercado-Allinger, on behalf of the Commission. Ms. Mercado Allinger is currently employed with the Commission and it is part of her job duties to sign off on permits such as archeology permit #7021. She is a designated representative of the Texas Historical Commission and is permitted to sign off on this permit in accordance with the Texas Administrative Code, Title 13, Part 2, Chapter 26, Subchapter D, Rule section 26.21.

3. TAC Archeology Permit #7021 is granted for monitoring to be performed on a potential or designated landmark or other public land known as Freedmen's Town Brick Streets, City of Houston, located in Harris County at the Intersection of Wilson and Andrews Streets, 2 blocks south of west Dallas Street and 7 blocks west of Heiner Street.

4. TAC Archeology Permit #7021 states that the land is owned or controlled by the City of Houston, that the permit sponsor is the Texas Department of Transportation and lists the principal investigator/investigation firm as Jon C. Lohse of Moore Archeological Consulting, Inc.

5. TAC Archeology Permit #7021 is to be in effect for a period of 10 years and 0 months and will expire on September 12, 2024. During the preservation, analysis, and preparation of a final report or until further notice by the Commission, artifacts, field notes, and other data gathered during the investigation will be kept temporarily at Moore Archeological Consulting. Upon completion of the final permit report, the same artifacts, field notes, and other data will be placed in a permanent curatorial repository at Sam Houston Museum in Huntsville.

# EXHIBIT A

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209314 - Page 1 of 6

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209314 - Page 2 of 6

6. The scope of work under TAC Archeology Permit #7021 shall consist of conduct archaeological monitoring for the City of Houston Freedmen's Town Brick Street Utility Relocations Project.

7. TAC Archeology Permit #7021 is the only permit needed for work to proceed on the Freedmen's Town Brick Streets Project. A Texas Historical Commission Antiquities Permit for Historic Buildings & Structures is not needed for this project.

8. Exhibit "A" is a true and correct copy of the TAC Archeology Permit #7021. Exhibit "B" is a true and correct copy of two field verification and determination letters related to written comments made by Linda Henderson on December 22, 2104 regarding her site visit conducted on December 15, 2014. Exhibit "C" is a true and correct copy of Ms. Henderson's Field notes from the December 15, 2014 site visit. These Exhibits are governmental records maintained in the normal course of business of the Texas Historical Commission by employees under my direction and control.

9. After a thorough search of our records I have determined that the Freedmen's Town in Houston is designated as a Historical District. However, it is not designated as a State Archeological Landmark nor is there a pending application to designate Freedmen's Town in Houston as a State Archeological Landmark. My search also revealed that Freedmen's Town is not designated as a Traditional Cultural Property.

10. It is the regular practice of the Texas Historical Commission or a representative of the Texas Historical Commission with knowledge of the act or event recorded to make or transmit the information to be included in the records; and the records were made at or near the time or reasonably soon thereafter. The records attached to this affidavit are the originals or exact duplicates of the originals.

All statements of fact contained herein are true and correct and are within my personal knowledge."



M ESTHER GARZA
NOTARY PUBLIC
State of Texas
Comm. Exp. 12-04-2017
NOTARY WITHOUT BOND

Mark Wolfe

SWORN TO and SUBSCRIBED before me by Mark Wolfe on this the 28th day of January 2015, 2015, to certify which witness my hand and seal of office.

M. Esther Garza

NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

*State of Texas*
# TEXAS ANTIQUITIES COMMITTEE
### ARCHEOLOGY PERMIT # 7021

*This permit is issued by the Texas Historical Commission, hereafter referred to as the Commission, represented herein by and through its duly authorized and empowered representatives. The Commission, under authority of the Texas Natural Resources Code, Title 9, Chapter 191, and subject to the conditions hereinafter set forth, grants this permit for:*

**Monitoring**

*To be performed on a potential or designated landmark or other public land known as:*

**Title:** **Freedmen's Town Brick Streets, City of Houston**

**County:** **Harris**

**Location:** **Intersection of Wilson and Andrews Streets, 2 blocks south of west Dallas Street and 7 blocks west of Heiner Street**

*Owned or Controlled by: (hereafter known as the Permittee):*

**City of Houston**
**611 Walker Street (15th Floor)**
**Houston, TX 77002**

*Sponsored by (hereafter known as the Sponsor*

**Texas Department of Transportation**
**125 East 11th Street**
**Austin, TX 78701**

*The Principal Investigator/Investigation Firm representing the Owner or Sponsor is:*

**Jon C. Lohse**
**Moore Archeological Consulting, Inc.**
**3511 Houston Avenue, Suite B**
**Houston, TX 77009**

*This permit is to be in effect for a period of:*

**10 Years and 0 Months**

*and Will Expire on:*

**09/12/2024**

*During the preservation, analysis, and preparation of a final report or until further notice by the Commission, artifacts, field notes, and other data gathered during the investigation will be kept temporarily at:*

**Moore Archeological Consulting**

*Upon completion of the final permit report, the same artifacts, field notes, and other data will be placed in a permanent curatorial repository at:*

**Sam Houston Museum in Huntsville**

*Scope of Work under this permit shall consist of:*

**Conduct archaeological monitoring for the City of Houston Freedmen's Town Brick Streets Utility Relocation Project. For details, see proposal submitted with permit application.**

## EXHIBIT A-1

ARCHEOLOGY PERMIT # 7021

**This permit is granted on the following terms and conditions:**

1) This project must be carried out in such a manner that the maximum amount of historic, scientific, archeological, and educational information will be recovered and preserved and must include the scientific, techniques for recovery, recording, preservation and analysis commonly used in archeological investigations. All survey level investigations must follow the state survey standards and the THC survey requirements established with the projects sponsor(s).

2) The Principal Investigator/Investigation Firm, serving for the Owner/Permittee and/or the Project Sponsor, is responsible for insuring that specimens, samples, artifacts, materials and records that are collected as a result of this permit are appropriately cleaned, and cataloged for curation. These tasks will be accomplished at no charge to the Commission, and all specimens, artifacts, materials, samples, and original field notes, maps, drawings, and photographs resulting from the investigations remain the property of the State of Texas, or its political subdivision, and must be curated at a certified repository. Verification of curation by the repository is also required, and duplicate copies of any requested records shall be furnished to the Commission before any permit will be considered complete.

3) The Principal Investigator/Investigation Firm serving for the Owner/Permittee, and/or the Project Sponsor is responsible for the publication of results of the investigations in a thorough technical report containing relevant descriptions, maps, documents, drawings, and photographs. A draft copy of the report must be submitted to the Commission for review and approval. Any changes to the draft report requested by the Commission must be made or addressed in the report, or under separate written response to the Commission. Once a draft has been approved by the Commission, one (1) printed, unbound copy of the final report containing at least one map with the plotted location of any and all sites recorded and two copies of the report in tagged PDF format on an archival quality CD or DVD shall be furnished to the commission. One copy must include the plotted location of any and all sites recorded and the other should not include the site location data. A paper copy and an electronic copy of the completed Abstracts in Texas Contract Archeology Summary Form must also be submitted with the final report to the Commission. (Printed copies of forms are available from the Commission or also online at www.thc.state.tx.us.)

4) If the Owner/Permittee, Project Sponsor or Principal Investigator/Investigation Firm fails to comply with any of the Commission's Rules of Practice and Procedure or with any of the specific terms of this permit, or fails to properly conduct or complete this project within the allotted time, the permit will fall into default status. A notification of Default status shall be sent to the Principal Investigator/Investigation Firm, and the Principal Investigator will not be eligible to be issued any new permits until such time that the conditions of this permit are complete or, if applicable, extended.

5) The Owner/Permittee, Project Sponsor, and Principal Investigator/Investigation Firm, in the conduct of the activities hereby authorizes, must comply with all laws, ordinances and regulations of the State of Texas and of its political subdivisions including, but not limited to, the Antiquities Code of Texas; they must conduct the investigation in such a manner as to afford protection to the rights of any and all lessees or easement holders or other persons having an interest in the property and they must return the property to its original condition insofar as possible, to leave it in a state which will not create hazard to life nor contribute to the deterioration of the site or adjacent lands by natural forces.

6) Any duly authorized and empowered representative of the Commission may, at any time, visit the site to inspect the fieldwork as well as the field records, materials, and specimens being recovered.

7) For reasons of site security associated with historical resources, the Project Sponsor (if not the Owner/Permittee), Principal Investigator, Owner, and Investigation Firm shall not issue any press releases, or divulge to the news media, either directly or indirectly, information regarding the specific location of, or other information that might endanger those resources, or their associated artifacts without first consulting with the Commission, and the State agency or political subdivision of the State that owns or controls the land where the resource has been discovered.

8) This permit may not be assigned by the Principal Investigator/Investigation Firm, Owner/Permittee, or Project Sponsor in whole, or in part to any other individual, organization, or corporation not specifically mentioned in this permit without the written consent of the Commission.

9) Hold Harmless: The Owner/Permittee hereby expressly releases the State and agrees that Owner/Permittee will hold harmless, indemnify, and defend (including reasonable attorney's fees and cost of litigation) the State, its officers, agents, and employees in their official and/or individual capacities from every liability, loss, or claim for damages to persons or property, direct or indirect of whatsoever nature arising out of, or in any way connected with, any of the activities covered under this permit. The provisions of this paragraph are solely for the benefit of the State and the Texas Historical Commission and are not intended to create or grant any rights, contractual or otherwise, to any other person or entity.

10) Addendum: The Owner/Permittee, Project Sponsor and Principal Investigator/Investigation Firm must abide by any addenda hereto attached.

Upon a finding that it is in the best interest of the State, this permit is issued on 09/12/2014.

*Pat Mercado-Allinger*

Pat Mercado-Allinger, for the
**Texas Historical Commission**

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209314 - Page 5 of 6

## TEXAS HISTORICAL COMMISSION
*real places telling real stories*

**Freedmen's Town Brick Streets Restoration Project ● Site Visit Form ● Date 12/22/2014**
(City of Houston WBS N-001315-0001-4/ TxDOT CSJ 0912-71-459)     *Site visit: 12/15/14*

This form has been developed as part of ongoing coordination for the above-referenced project, an undertaking funded by the Federal Highway Administration and subject to Section 106 of the National Historic Preservation Act of 1966 and the Texas Antiquities Code. This serves as official comment from Texas' State Historic Preservation Officer, the Executive Director of the Texas Historical Commission (THC). Please contact Linda Henderson, linda.henderson@thc.state.tx.us, or Mark Denton, mark.denton@thc.state.tx.us, with questions about the THC's review of this project.

In particular, this form represents field verification and determinations related to written comments made by

THC on __12/12/2014__ related to the __Brick Removal Plan-Submittal 47B__ required per

project protocols and specifications. (THC Tracking Number __201503224__ )

☐ Verified: No Adverse Effect to Historic Properties
    ☐ Project May Proceed Based on Protocols and Specifications

☒ No Adverse Effect with Conditions: *We were unable to watch actual removal process and have heard of some concerns with the use of picks. Please follow the protocols but also minimize use of tools that might damage the bricks — and please be aware of public perception and sensitivity about*
    ☒ Project May Proceed Based on Protocols, Specifications, and Conditions *removal process.*

☐ Adverse Effect due to: _____

    ☐ Project Should STOP Pending Further Consultation

By _____*Linda Henderson*_____ Date 12/22/14
For: Mark Wolfe, State Historic Preservation Officer

Copy of Site Visit Form Received by:

_____ Date: _____
For: City of Houston Public Works & Engineering

RICK PERRY, GOVERNOR ● GILBERT E. PETERSON, CHAIRMAN ● MARK WOLFE, EXECUTIVE DIRECTOR
P.O. BOX 12276 ● AUSTIN, TEXAS ● 78711-2276 ● P 512.463.6100 ● F 512.475.4872 ● TDD 1.800.735.2989 ● www.thc.state.tx.us

For submittals 47 B & 48 B / 201503224 / 201503223

## FIELD NOTES

12/16/14

In attendance:

from TxDOT:
Mario Sanchez
Rebekah Dobrasko ENV
Roberto Mascardo Hou

from TTC:
Mark Denton
Linda Henderson

city:
Brian Alcott
Jeanne Kamranw
Keith Wade

Jacobs:
Hugh Brightwell et al

pro-modubert
conrad:
Brian Conrad
Don Conrad
Daryl Ball

### Bricks

☑ Removal methods — due to protesters, did not get to see but saw results and heard from concerned onlookers about possible damage; contractor explained situation — brick fragments were already broken in situ, prior to removal. Picks used only on first brick to pop them up.

☐ Palletizing/Shipping — did not get to see

☑ Storage — as expected

☑ Cleaning Methods — used low setting water and no damage was observed.

☑ Mock-up—Color—Pattern — 3 types of bricks in play — original, close match from Kansas, historic brick from other part of Houston. Keith Wade reported that stakeholders approved mock-up.

### Archeological Monitoring

☐ Compliance with Protocols — did not get to observe but talked at length with archeologists

Stakeholder Input — numerous protesters blocked site demonstration, laying in the street, singing chanting, etc. They continue to want bricks numbered and placed back in original locations. Among those on site: Catherine Roberts, Doris Ellis, Rev. Pervis Hall, Priscilla _____.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209314 - Page 6 of 6



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:        64209314 Total Pages:  6

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

2/11/2015 5:29:24 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 4117401
By: SONNIER, ARRON W
Filed: 2/11/2015 5:29:24 PM

CAUSE NO. 2015-02771

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION, PLAINTIFF, | § § § | IN THE DISTRICT COURT |
| V. | § § | HARRIS COUNTY, TEXAS |
| THE CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD, DEFENDANTS. | § § § § | 80TH JUDICIAL DISTRICT |

**ORDER OF DISMISSAL**

ON THIS DAY the Court considered Defendant City of Houston's Plea to the Jurisdiction. The Court is of the opinion that the Plea is meritorious and should be GRANTED. IT IS THEREFORE ORDERED

That the Defendant's Plea to the Jurisdiction is GRANTED and this case is dismissed in its entirety as to the City of Houston.

SIGNED THIS \_\_\_\_ DAY OF February, 2015

_____
PRESIDING JUDGE

For Official Governmental Use Only - Do Not Disseminate to the Public: 64209315 - Page 1 of 1



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:        64209315 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

APPENDIX 6

CAUSE NO. 2015-02771

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION, PLAINTIFF, | § § § | IN THE DISTRICT COURT |
| V. | § § | HARRIS COUNTY, TEXAS |
| THE CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD, DEFENDANTS. | § § § § | 80TH JUDICIAL DISTRICT |

~~Denial of Plea to Jurisdiction~~ *Denial of Plea to Jurisdiction L*

~~ORDER OF DISMISSAL~~

ON THIS DAY the Court considered Defendant City of Houston's Plea to the Jurisdiction. ~~The Court is of the opinion that the Plea is meritorious and should be GRANTED.~~ IT IS THEREFORE ORDERED

That the Defendant's Plea to the Jurisdiction is *Denied* ~~GRANTED and this case is dismissed in its entirety as to the City of Houston.~~

SIGNED THIS 12th DAY OF February, 2015

PRESIDING JUDGE

**F I L E D**
Chris Daniel
District Clerk

FEB 12 2015
Time:_____ 11:48
Harris County, Texas
By_____
Deputy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

For Official Governmental Use Only - Do Not Disseminate to the Public: 64215960 - Page 1 of 1



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:        64215960 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

APPENDIX 7

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION, PLAINTIFF, | § § § | IN THE DISTRICT COURT |
| V. | § § § | HARRIS COUNTY, TEXAS |
| THE CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD, DEFENDANTS. | § § § § | 80TH JUDICIAL DISTRICT |

### Notice of Interlocutory Appeal

Pursuant to Texas Rule of Appellate Procedure 25.1, Defendant files this Notice of Appeal.

1. Defendant The City of Houston desires to appeal the denial of its plea to the jurisdiction in this cause.

2. The district court signed the Denial of Plea to Jurisdiction denying the plea on February 12, 2015. A copy of the Order is attached.

3. This appeal is taken to the First or Fourteenth Court of Appeals at Houston, Texas.

4. Defendant has not previously filed a related appeal or original proceeding in either the First or Fourteenth Court of Appeals.

3. This is an accelerated interlocutory appeal under Tex. Civ. Prac. & Rem. Code § 51.014(a)(8); it is not a parental-termination or child-protection case.

4. This appeal stays all proceedings in the trial court pending resolution of the appeal. Tex. Civ. Prac. & Rem. Code § 51.014(b).

Respectfully submitted,

DONNA L. EDMUNDSON
City Attorney
JUDITH L. RAMSEY
Chief, General Litigation Section

/s/ *Darah Eckert*
Darah Eckert
Senior Assistant City Attorney
SBN 24007141
Lisa A. Ketai
Senior Assistant City Attorney
SBN 11362400
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street
Houston, Texas 77002
832.393.6348 (telephone)
832.393.6259 (facsimile)
darah.eckert@houstontx.gov

*Attorneys for Defendant The City of Houston*

## Certificate of Service

I hereby certify that on this 12th day of February, 2015, a true and correct copy of the foregoing has been served on counsel below via e-service.

Benjamin L. Hall, III
The Hall Law Firm
530 Lovett Boulevard
Houston, Texas 77006
bhall@bhalllawfirm.com

/s/ *Darah Eckert*
Darah Eckert

2

CAUSE NO. 2015-02771

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION, PLAINTIFF, | § § § | IN THE DISTRICT COURT |
| V. | § § | HARRIS COUNTY, TEXAS |
| THE CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD, DEFENDANTS. | § § § § | 80TH JUDICIAL DISTRICT |

Denial of Plea to Jurisdiction ~~ORDER OF DISMISSAL~~ £

ON THIS DAY the Court considered Defendant City of Houston's Plea to the Jurisdiction. ~~The Court is of the opinion that the Plea is meritorious and should be GRANTED~~. IT IS THEREFORE ORDERED

That the Defendant's Plea to the Jurisdiction is ~~GRANTED~~ Denied ~~and this case is dismissed in its entirety as to the City of Houston.~~

SIGNED THIS 12th DAY OF February, 2015

PRESIDING JUDGE

**FILED**
Chris Daniel
District Clerk

FEB 12 2015

Time: 11:48

Harris County, Texas

By_____
Deputy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

For Official Governmental Use Only - Do Not Disseminate to the Public: 64215960 - Page 1 of 1



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:        64215960 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

APPENDIX 8

CAUSE NO. 2015-02771

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION, Plaintiff | § § § | IN THE DISTRICT COURT OF |
| v. | § § | HARRIS COUNTY, T E XA S |
| THE CITY OF HOUSTON and CONRAD CONSTRUCTION CO., LTD., Defendants. | § § § § | 80ᵗʰ JUDICIAL DISTRICT |

## DEFENDANT'S NOTICE OF APPEAL
## (INTERLOCUTORY)

Defendant, Conrad Construction Co., Ltd., files its Notice of Appeal from the Trial Court's (1) Order Granting Temporary Injunction (signed, March 2, 2015), and (2) Order Denying Motion to Dissolve (signed, March 20, 2015). This appeal is *interlocutory* pursuant to TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4) (Vernon 2012). Conrad intends to appeal said orders to either the First or Fourteenth Court of Appeals. Conrad gives notice *a related appeal* was previously filed in the Fourteenth Court of Appeals per the *attached statement*.

SIGNED and FILED this 20ᵗʰ day of March, 2015.

Respectfully submitted,

ANDREWS MYERS, P.C.

By: /s/ Robert A. Plessala

Robert Plessala
State Bar No. 16069200
rplessala@andrewsmyers.com
3900 Essex Lane, Suite 800
Houston, Texas 77027
(713) 850-4200 (telephone)
713-850-4211 (fax)

ATTORNEYS FOR DEFENDANT
CONRAD CONSTRUCTION CO., LTD.

For Official Governmental Use Only - Do Not Disseminate to the Public: 64726010 - Page 1 of 3

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record in accordance with the Texas Rules of Civil Procedure on this the 20th day of March, 2015.

VIA EMAIL – BHALL@BHALLLAWFIRM.COM
Benjamin Hall
The Hall Law Firm
530 Lovett Boulevard
Houston, TX 77006
*Attorney for Plaintiff*

Via Email – darah.eckert@houstontx.gov
Darah Eckert
Sr. Asst. City Attorney
900 Bagby Street
Houston, TX 77002
*Attorney for City of Houston*

Via First Class Mail
Christopher A. Prine
Clerk, First Court of Appeals
First Court of Appeals
301 Fannin Street
Houston, TX 77002

Via First Class Mail
Christopher A. Prine
Clerk, Fourteenth Court of Appeals
Fourteenth Court of Appeals
301 Fannin Street
Houston, TX 77002

/s/ Robert A. Plessala
Robert A. Plessala

2

For Official Governmental Use Only - Do Not Disseminate to the Public: 64726010 - Page 2 of 3

**Local Rule Notice of and Assignment of Related Case in Appeals**

As required by the Local Rules Relating to Assignment of Related Cases to and Transfers of Related Cases between the First and Fourteenth Courts of Appeals, I certify that the following related appeal or original proceeding has been previously filed in either the First or Fourteenth Court of Appeals:

Caption:   *City of Houston v. Freedman's Town Preservation Coalition*

Appeal Case No:   14-15-00138-CV; Fourteenth Court of Appeals

Trial Court No:   2015-02771; 80th District Court, Harris County, Texas

ANDREWS MYERS, P.C.

By: /s/ Robert A. Plessala
      Robert Plessala
      State Bar No. 16069200
      rplessala@andrewsmyers.com
      3900 Essex Lane, Suite 800
      Houston, Texas 77027
      (713) 850-4200 (telephone)
      713-850-4211 (fax)

ATTORNEYS FOR DEFENDANT
CONRAD CONSTRUCTION CO., LTD.

4839-4067-1266
3782.1

For Official Governmental Use Only - Do Not Disseminate to the Public: 64726010 - Page 3 of 3



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this    March 26, 2015

Certified Document Number:        64726010 Total Pages:  3

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated**
**documents are valid. If there is a question regarding the validity of this document and or seal**
**please e-mail support@hcdistrictclerk.com**

APPENDIX 9

CAUSE NO. 2015-02771

| | | |
|---|---|---|
| FREEDMEN'S TOWN PRESERVATION COALITION AND CATHERINE ROBERTS | § § § | IN THE DISTRICT COURT |
| VS. | § § | HARRIS COUNTY, TEXAS |
| CITY OF HOUSTON AND CONRAD CONSTRUCTION CO., LTD. | § § § | 80TH JUDICIAL DISTRICT |

## ORDER STRIKING PETITION IN INTERVENTION

Pending before the Court is the Motion to Strike Intervention filed by Plaintiffs Freedmen's Town Preservation Coalition and Catherine Roberts, and the Court is of the opinion that the Motion should be *GRANTED*.

It is therefore *ORDERED* that the Petition in Intervention filed on February 10, 2015 by Robin Street Square Townhome Association, Crosby Street Square Townhome Association and Valda Bush is hereby in all things *STRICKEN* from this cause.

*SIGNED* the _12th_ day of February, 2015.

PRESIDING JUDGE

**FILED**
Chris Daniel
District Clerk

FEB 12 2015

Time:_____ 11:48
Harris County, Texas

By_____
Deputy

For Official Governmental Use Only - Do Not Disseminate to the Public: 64215959 - Page 1 of 1

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 12, 2015

Certified Document Number:        64215959 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

APPENDIX 10

CAUSE NO. 2015-02771

FREEDMEN'S TOWN                § IN THE DISTRICT COURT OF
PRESERVATION COALITION,        §
                Plaintiffs     §
                               §
                               §
VS.                            § HARRIS COUNTY, T E X A S
                               §
                               §
                               §
THE CITY OF HOUSTON,           §
                Defendant      § 80TH JUDICIAL DISTRICT

Plaintiff's Motion
for Temporary Injunction
March 2, 2015

Michelle Tucker
Official Court Reporter
80th District Court
Harris County, Texas

Proceedings reported by:  Machine Shorthand

Town?

A.   Yes.

Q.   Are you trying to oppose any efforts of people to get fresh water or updated sanitary sewer lines in that area?

A.   Oh, no.  Contrary.  I work very hard to promote upgrading and that.

Q.   Mr. Plessala asked a question of Ms. Wagner just a few moments ago about any applications to designate the Wilson and Andrews streets as national landmarks. Did you hear that series of questions?

A.   Yes, I did.

Q.   You have knowledge about that, don't you?

A.   Yes, I do.

Q.   Let me show you what has been identified as Plaintiff's Exhibit 43.  Do you recognize that document?

A.   Yes, I do.

Q.   Would you tell the Court what that document is?

A.   This is a state antiquities landmark nomination form for the brick paved Andrews and Wilson streets and part of Robin Street in Freedmen's Town National Registered Historic District.

Q.   Would you tell the Court what date this nomination form was created?

A.   It was applied for January 29th of 2015.

Q.   And is this application presently pending before the Texas Historical Commission for the Wilson and Andrews streets?

A.   Yes, it is.

MR. HALL:   Your Honor, plaintiffs would move into evidence Plaintiff's Exhibit 43.

MR. PLESSALA:   I don't have that, may I approach and look, Your Honor?

THE COURT:   Yes, if you would tender it, please.

MR. PLESSALA:   No objection, Your Honor.

THE COURT:   It's admitted.

MR. HALL:   Thank you.

Q.   (BY MR. HALL)  Ms. Roberts, please -- Mrs. Roberts, please tell the Court what is the purpose of this nomination form?

A.   The purpose is to call attention to some portion of the historic -- National Historic District that is eligible, has been eligible for this landmark status.

Q.   Now, we've told the Court we believe that these streets are eligible for a designation as landmarks. Is this one of the processes by which we can get in a normal designation?

A.   Yes, it is.

Q.   But that's not our only basis for contending that

THE STATE OF TEXAS

COUNTY OF HARRIS

I, Michelle Tucker, Official Court Reporter in and for the 80th District Court of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this reporter's record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

WITNESS MY OFFICIAL HAND this the 6th day of March, 2015.

```
                              /s/  Michelle Tucker
                              MICHELLE TUCKER
                              Official Court Reporter
                              80th District Court
                              201 Caroline, Rm. 915
                              Houston, Texas  77002
                              713-368-6090
                              Texas CSR No. 2827
                              Expiration date: 12-31-16
```

APPENDIX 11

REPORTER'S RECORD

VOLUME 2 OF 2 VOLUMES

CAUSE NO. 2015-02771

FREEDMEN'S TOWN PRESERVATION§ IN THE DISTRICT COURT OF
COALITION, et al                §
                                §
VS.                             § HARRIS COUNTY, T E X A S
                                §
THE CITY OF HOUSTON, et al  § 80TH JUDICIAL DISTRICT


*************************************************************

MOTION FOR TEMPORARY INJUNCTION

AFTERNOON SESSION

*************************************************************


On the 2nd day of March, 2015, the following proceedings came on to be heard in the above- entitled and numbered cause before the HONORABLE LARRY WEIMAN, Judge Presiding of the 80th District Court of Houston, Harris County, Texas.

Proceedings reported by stenographic method.


LaVEARN IVEY

DEPUTY OFFICIAL COURT REPORTER

80TH DISTRICT COURT

HARRIS COUNTY, TEXAS

historic district in the National Register of Historic Places and therefore it's subject to section C of the Antiquities Code Texas National Resource Code, section 191.0525. If the project is inside a designated historic district which it is then the Texas Historical Commission is responsible for the project.

The court finds that the road in question, the brick road is a structure. The court finds that while the evidence in this temporary injunction hearing has shown the site to be a, or to qualify as a state archeological landmark, that final determination appears to have to be made by the Texas Historical Commission. However this court finds at a minimum the plaintiff has met its burden of proving that the site is at least eligible to be designated as a state archeological landmark. And therefore, there are permits that are required under the Natural Resource Code including section 191.131 for the demolition or destruction of a historical landmark.

The court finds that the plaintiff has met its burden of demonstrating that it has met all the requirements necessary to be entitled to a temporary injunction. Having demonstrated that they do have a viable and valid cause of action, that they have demonstrated their probable right to relief sought and that if the temporary injunction is not granted that there

THE STATE OF TEXAS

COUNTY OF HARRIS

I, LaVearn Ivey, Deputy Court Reporter in and for the 80th District Court of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that the total cost for the preparation of this Reporter's Record is $768.00 and was paid by City of Houston.

WITNESS MY OFFICIAL HAND this the 5th day of March, 2015.

/s/ LaVearn Ivey _
LaVEARN IVEY, Texas CSR No. 822
Expiration date: 12-31-16
Court Reporter
80th District Court
Harris County, Texas
8831 Bedworth Ln.
Houston, Texas  77088
(281) 820.0805